# CHARLESTOWN.

KIMMEL, ADM'R. OF NANCY RECTOR *v.* SHROYER, *et al.*

Submitted June 15, 1886.—Decided September 22, 1886.

1. A testator bequeaths the one third of his personal estate to his widow and the residue to three of his children, and what is claimed by the legatees to be a portion of the general estate consists of a specified sum of money and certain bonds, which the executor claims were transferred to him by the testator in his lifetime and are therefore no part of the estate. After the death of the widow a suit is brought by her administrator against the executor and legatees of said testator to compel the executor to settle his accounts, to charge him with said money and the proceeds of said bonds and for distribution of said estate. In this

| 28 | 505 |
| 39 | 228 |
| 28 | 505 |
| 41 | 657 |
| 28 | 505 |
| 48 | 451 |
| 28 | 505 |
| 63 | 289 |

suit the deposition of the widow, taken *de bene esse*, is read and portions of it relate to personal transactions and communications had in respect to said money and bonds between the executor and the testator. The deposition of the executor is also taken on his own behalf: HELD :

I. The deposition of the widow was itself incompetent evidence, and could not therefore lay the foundation for making the executor a competent witness to testify in his own behalf as to personal transactions or communications had with the deceased, nor could it make his wife a competent witness as to such transactions and communications. The testimony of both the executor and his wife as to such matters was therefore incompetent.

II. Objections to the competency of the testimony in such case may be made at the hearing of the cause or in the appellate court, although no exception was made to the deposition.

2. The appellate court will not in a chancery cause reverse a decree, for the reason that the circuit court erroneously overruled the appellant's exceptions to depositions and permitted the reading of incompetent testimony, where the competent evidence clearly sustains the decree; but if the evidence other than that, which is incompetent, is not plainly sufficient to justify the decree, the same will be reversed by the appellate court. (p. 513.)

*Martin & Woods* for appellant.

No appearance for appellee.

SNYDER, JUDGE :

In February 1882, Willis Rector died testate in Taylor county. At the time of his death he was the owner of a considerable personal estate, consisting principally of money, bonds, notes and other evidences of debts due to him. By his will he bequeathed the one third of said estate absolutely to his widow, $100.00 to Miranda Shroyer and the residue to his two daughters, Miranda Shroyer and Mary S. Ludwick, and the children of Eliza L. Harper a deceased daughter, to be equally divided between them. Taylor M. Shroyer, the husband of said Miranda, was made executor by the will and duly qualified as such in the clerk's office of said county.

Nancy Rector, the widow of said Willis Rector, died testate in January, 1883. Her estate at the time of her death seems to have consisted only of the legacy, bequeathed to her by her late husband, the greater part of which had not

been paid over to her.   Subject to certain specified legacies she bequethed her estate to her neice, Henrietta, the wife of S. P. Kimmel, the latter of whom was duly appointed and qualified as the administrator of her estate with the said will annexed.

On May 20, 1883, S. P. Kimmel, administrator as aforesaid, instituted this suit in the circuit court of Taylor county, against the said executor and legatees of the said Willis Rector, deceased, and the sureties of said executor.   The plaintiff's bill, among other matters, avers that the said Taylor M. Shroyer, executor as aforesaid, has returned an appraisement of only part of the estate of his testator, and that he had failed to settle and account for the assets of said estate as required by law, that in addition to the assets reported by the executor belonging to said estate, the executor had received and was chargeable with the sum of $365.00 cash paid to him as the agent of the testator a short time before his death, and also three bonds of $500.00 each executed to the testator by Thomas B. Powell, which were placed by the testator in the hands of the executor about a month before his death to collect for him, the testator being then a feeble and decrepit old man eighty years of age, having been for months before confined to his room and almost totally blind.   The prayer of the bill is that the executor may be required to account as such for said money and the proceeds of said bonds, which it is alleged he had collected, that he may settle his executorial accounts, and that the legacy bequethed to the plaintiff's testate may be paid to the plaintiff, and for general relief.

The defendant Taylor M. Shroyer, executor, answered the bill, and in regard to said $365.00 and Powell bonds, he says, that Willis Rector with his wife occupied a portion of his house and farm for about seven years just preceding his death; that a large portion of said time, especially the last eighteen months, the said Rector was sick and confined to his bed, and that during the whole of said time said Rectors were waited upon and cared for by him and his family, and they were furnished without compensation many things necessary for their support; that in consideration of these matters and the affection for his family the said Willis Rec-

tor gave to him said sum of $365.00 and the balance due on said Powell bonds; that after said bonds were given to him he placed them in the hands of his attorney for suit; he therefore insists that said money and the proceeds of said bonds became his property before the death of his testator and have nothing to do with his executorial accounts.

Both the plaintiff and the defendant, Shroyer, took many depositions, and after the same had been taken and filed in the cause, the court by its decree of April 1, 1884, referred the cause to a commissioner for a report and the settlement of the executorial accounts of said Shroyer. The commissioner made his report in which he did not charge the executor with said $365.00, or the proceeds of said Powell bonds, and the plaintiff excepted to said report because it failed to charge the executor with said money and the proceeds of said bonds. By a final decree entered August 7, 1884, the court overruled the plaintiff's exceptions and confirmed said report. From this decree and that of April 1, 1884, the plaintiff obtained this appeal.

The only controversy involved in this appeal is, whether or not the said Taylor M. Shroyer should be charged as executor of his testator with said money and bonds. Prior to the institution of this suit the deposition of Nancy Rector, the plaintiff's testatrix, had been taken *de bene esse* and the same was used by the plaintiff as evidence in this cause. In that deposition the said Nancy Rector testified, that about two or three weeks before the death of her husband, Willis Rector, she by the direction of her husband handed to the said Taylor M. Shroyer one of said Powell bonds in order that he might have suit brought upon it for her husband. She also testified, among other matters, that some time before his death her husband had sent by said Shroyer $365.00 to the bank in Gratton.

The deposition of the defendant, Taylor M. Shroyer, was taken in his own behalf, and, after he had testified that Willis Rector and his wife had lived for seven years in a part of his house; that he and his family had waited upon them and done all the work they had to do, the following questions were asked him, exceptions taken thereto and answers given by him:

"Question.—State whether you ever received any compensation for these services or for the use of your property.

"(Exception No. 1.—Plaintiff objects to the question and any answer thereto, because it relates to a transaction had personally between the witness and plaintiff's intestate.)

"Answer.—I never did except in notes and check.

"Question.—State what notes and check you mean, and from whom you received them.

"(Exception No. 2.—To this question the plaintiff repeats his exception to the last question.)

"Answer.—I received the Thomas B. Powell notes. Mrs. Rector gave them to me. Mr. Rector told her to give them to me. He could not see to get about to get them. Mrs. Roctor gave me the check. Mr. Rector told her to give it to me.

"Question.—Whose name was signed to the check?

"Answer.—My name was signed to the check. He told me to sign it and take the money and use it as my own.

"(Exception No. 3.—To the last question the plaintiff repeats his exception.)

"Question.—Did Mrs. Rector give you the Powell notes all at one time; and if so, how long before your father-in-law's death?

"(Exception No. 4.—To the last question the plaintiff repeats his exception.)

"Answer.—She did; it was about two months before, in December, I think."

In the aforesaid decree of April 1, 1884, in which the order was made referring the cause to a commissioner, the court as a part of said decree overruled the aforesaid exceptions of the plaintiff to the deposition of the defendant, Shroyer. It is insisted here for the appellant that this action of the court was erroneous and was in effect a direction to the commissioner that said testimony was competent and should be considered so by him in making his report.

Our statute prohibits any party to a suit or person interested in the event thereof from being "examined as a witness in regard to any personal transaction or communication between such witness and a person, at the time of such examination, deceased, insane or lunatic, against the executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee or survivor of such deceased person, &c." But this

prohibition shall not extend to any transaction or cummunication as to which any such executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee, survivor or committee shall be examined in his own behalf, nor as to which the testimony of such deceased person or lunatic shall be given in evidence." Sec. 23, ch. 160, Acts 1882, p 554.

It seems to me that the intent and true construction of this statute, in a case in which the testimony of an executor, legatee or other beneficiary claiming under a deceased person is used in a suit, is to permit the opposing party or claimant to testify on his own behalf in order that he may explain and give his version and understanding of the transaction or communication had with the deceased person as to which such executor, or legatee has testified, that he may contradict or dispute the correctness of the testimony of the executor or legatee, or explain it according to his understanding. But I do not think it was intended that such opposing claimant should be permitted to go beyond this and give substantive testimony as to such personal transaction or communication had by him with the deceased person and thus prove and establish his claim against the estate of the deceased person by his own testimony. He should be confined to a rebuttal, denial or explanation of the testimony given by the executor, or legatee. As an illustration we may take the facts in this case. Here Mrs. Rector testified that the testator gave the defendant Shroyer one of the Powell bonds for one purpose, and after her death then Shroyer testified on his own behalf that the testator gave him three Powell bonds for a different purpose. Is it the intent and purpose of the statute in such case to permit Shroyer to establish his title to said three bonds by his own testimony? Much may be said in the same conversation and one transaction may consist of many acts, a part of the conversation may be in the hearing of the legatee and a part of it not in his hearing, or some of the acts of the transaction may be known to the legatee and others not, then if the legatee testifies as to the conversation had in his hearing or the acts within his knowledge, can it be believed that the legislature by this statute intended that the opposing party or claimant shall be allowed to testify to such parts of the same conversation or transac-

tion with the deceased person as were not within the knowledge of the legatee and therefore not testified to by him? If such a construction is adopted, then it seems to me the object and policy of the statute may be easily defeated and in many instances entirely evaded. The statute is evidently based upon the presumption that interested parties may by false testimony, rob or defraud the estates of deceased persons. If therefore the mere fact that a legatee or other beneficiary of such estate shall testify as to any transaction or conversation had with the decedent makes the adverse party a competent witness, then, he may by falsely adding to the conversation or the acts constituting what he claims was the transaction, entirely evade the effect of the statute. He could deny the truth of the testimony of the legatee and then testify that the same transaction or communication was such as to fully establish his claim and thus by his own testimony not only deny and contradict or explain that of the legatee, but give substantive evidence against the estate and thereby establish his claim or defeat the claim asserted against him. If such a construction should prevail, the only safety or protection for estates will be for the legatees or beneficiaries to refrain from giving evidence in their own behalf.

But be this as it may, the exceptions to Shroyer's deposition, under the peculiar facts in this cause, should have been sustained. Nancy Rector, the legatee who testified was not the only legatee. There were three others who did not testify and the testimony of Shroyer was necessarily used against them as well as against the estate of Mrs. Rector. The legacies of all these were general and not specific so that any diminution of the estate of the testator affected all and each of the legatees. The money and the Powell bonds referred to in the deposition were parts of the general fund bequeathed to all these legatees. If these are adjuded to Shroyer all these legacies must be reduced proportionately. This money and these bonds belonged wholly to Shroyer or they were all assets of the estate. The proportion of Mrs. Rector could not belong to Shroyer and the residue to the other legatees. There is no legal rule or principle upon which the ownership asserted by Shroyer can be sustained as to an undivided part and not to the whole. No such claim is made by him.

But this is not a suit in which the legatees have the legal title to the fund in controversy. The legal title is in the executor and the legatees claim through and under him. If the fund were necessary to pay debts, then the creditors and not the legatees would be the beneficiaries. In such case it would not be contended that if one of the creditors had testified in regard to a personal transaction with the deceased, that that would give an adverse claimant of the estate the right to testify. It is immaterial that Shroyer in this case happens to be both the executor and the adverse claimant. He certainly could not testify as executor and then offer himself as a witness on his own behalf as an adverse claimant because he had previously testified as executor. If such were the law, the personal representative could always make himself a competent witness in his own behalf against the estate of his decedent. *Martin* v. *Smith,* 25 W. Va. 579; *Seabright* v. *Seabright, supra,* p. 412.

Before the testimony of the executor or legatee can make that of a person claiming against the estate a competent witness, the executor or legatee must testify as to some matter about which he was legally competent to testify. The fact that illegal or incompetent testimony has been admitted on one side can not lay the foundation for the introduction of incompetent testimony on the opposite side. In the cause before us, the deposition of Mrs. Rector was itself incompetent. She could not, under the statute, " be examined as a witness in regard to any personal transaction or communication between " her and the decedent, her late husband. Her evidence did relate to such personal transactions and therefore was incompetent. Her testimony then, being itself incompetent; could not be the cause of making that of the defendant Shroyer competent or admissable. Thus it necessarily follows, that the portions of Shroyer's testimony objected to by the appellant was plainly incompetent and should have been excluded by the court, and it should also have excluded the depositions of Mrs. Rector as incompetrnt. There are other portions of Shroyer's deposition relating to personal transactions and communications had with the decedent, Willis Rector, which are also incompetent. *Calwell* v. *Prindle,* 11 W. Va. 307; *Owens* v. *Owens,* 14 *Id.* 88. And

for the same reasons all those portions of the deposition of Miranda Shroyer, the wife of said Tyler M. Shroyer, relating to personal transactions and communications between the said Shroyer and Willis Rector, deceased, were likewise incompetent. *Kilgore* v. *Hanly*, 27 W. Va. 451. Where the objection to testimony relates to the competency of the witness the objection may be made on the hearing or in the appellate court, although no exception was made to the deposition. *Rose* v. *Brown*, 11 W. Va. 122; *Martin* v. *Smith*, 25 *Id.* 579, 587.

If it clearly appeared from the whole evidence in the cause, that the report of the commissioner and the decree of the circuit court confirming the same were fully sustained by the proofs, exclusive and independent of the testimony hereinbefore held to be incompetent, this Court would not reverse said decree by reason of the error in holding said testimony to be competent. But upon a careful examination of the legal evidence in the record, I am unable to say that, if said incompetent testimony had been disregarded, either the commissioner or the court would have reached the conclusion set forth in said report and sustained by the final decree. I am, therefore, of opinion that said decrees of April 1, and August 7, 1884, must be reversed, the said exceptions of the appellant to the deposition of Taylor M. Shroyer sustained; and this cause is remanded to the circuit court with directions to it to declare such portions of the depositions of said Shroyer and wife as relate to personal transactions or communications had between such witnesses or either of them and the testator, Willis Rector, deceased, incompetent and inadmissable as against the legatees of said Rector, and to refer the cause to a commissioner for an account and proper settlement of the estate of said Willis Rector, deceased, and for such further action as may be proper for the final determination of the cause.

REVERSED. REMANDED.