R. P. MANN

*v.*

C. W. PECK, ADMINISTRATOR, ETC., *et al.*

(No. 10598)

Submitted January 26, 1954.    Decided March 16, 1954.

488

*H. E. DeJarnette, W. Cody Fletcher,* for appellant.

*Sherman Ballard,* for appellee.

RILEY, JUDGE:

R. P. Mann brought this suit in equity in the Circuit Court of Monroe County on behalf of himself and of all creditors, known and unknown, of Lula Christian, deceased, against the defendants, C. W. Peck, Administrator of the Estate of Lula Christian, deceased; Hinton Hospital, a corporation; and D. C. Christian, for the purpose of selling decedent's real estate to make assets available to satisfy claims outstanding against the decendent's estate. From a decree declaring that the personal property in decedent's estate is insufficient to pay the debts, allowing the claim of the plaintiff, R. P. Mann, in the amount of $879.67, based upon two demand promissory notes, and decreeing the sale of decedent's real estate by named special commissioners, the administrator prosecutes this appeal.

Lula Christian, about sixty years of age, residing in Monroe County, died intestate on August 14, 1950, leaving D. C. Christian, her son, as her only heir at law. Later defendant, C. W. Peck, qualified as administrator of decedent's estate. The estate was appraised at $4,216.85, the real estate having been appraised at $3,100.00. The accounts of the administrator having been referred to a commissioner of accounts, notice was given, as required by Code, 44-4-11.

Pursuant to this notice, the plaintiff, R. P. Mann, decedent's brother, presented an itemized claim, consisting of four items, against the estate in the total amount of $965.40, two of which items, in the respective amounts of $631.00 and $248.67, were evidenced by two promissory demand notes, executed during decedent's last illness, and the other two items of which were claims for services alleged to have been rendered decedent during her lifetime, in the respective amounts of $52.00 and $33.73, or a total of $85.73. To this claim the administrator set up a claim against Mann for money alleged to have been received by the latter during the decedent's lifetime from the sale of a cow, in the amount of $150.00, and chickens, in the amount of $28.00, both of which were owned by decedent, it being asserted by the administrator that Mann had not accounted to the estate for the proceeds of these sales.

The commissioner of accounts allowed plaintiff's claim in the full amount of $965.40, and refused the items of $150.00 and $28.00, claimed by the administrator.

On December 7, 1951, the commissioner of accounts completed his report, the only exception taken thereto being presented by the administrator; and thereafter on December 1, 1951, the commissioner of accounts filed his report in the county court clerk's office, as required by statute.

On January 7, 1952, Mann, by his attorney, moved the County Court of Monroe County to consider the report of the commissioner of accounts and to ratify it. Thereupon,

the defendant administrator, by his attorney, filed an exception to the report, stating as ground for the exception that the claim of Hinton Hospital, a corporation, for services rendered during decedent's last illness, amounting to $325.00, had not been allowed. The county court sustained the administrator's exception to the report, and approved the commissioner's report, with the following qualification: That the administrator allow "the claim of Hinton Hospital as a preferred claim in the amount of $50.00, and allow the residue of the claim as a general claim against the estate."

Then followed the bringing of this suit by a precipe filed on March 3, 1952, in which, as heretofore indicated, the plaintiff sought to have the decedent's real estate sold to satisfy the outstanding indebtedness of the estate. In this suit the matters arising therein were referred to a commissioner in chancery on April 1, 1952; and on May 5, 1952, decedent's administrator Peck was granted a writ of error by the Circuit Court of Monroe County to the order of the county court allowing plaintiff's claim in the full amount. Depositions were taken in this suit in equity on June 24, and July 8, 1952; and on July 8, 1952, the commissioner in chancery filed his report in compliance with the decree of the Circuit Court of Monroe County.

On July 11, 1952, the circuit court by order entered on that day, to which no objection was made, consolidated the case arising on the writ of error to the order of the county court with the suit in equity now before this Court on appeal.

In the suit in equity the circuit court entered a decree of sale, which recited, *inter alia*, that "upon consideration whereof, the exceptions to the said report are sustained as to the open account of R. P. Mann amounting to $85.73, which is disallowed, and as to the other matters set forth in said report, the exceptions are overruled and the said report as modified is confirmed." This decree further recites that the personal property in the hands of the administrator, which is available for the payment of debts, is not sufficient to pay the debts of decedent's

estate, and that it will be necessary to subject decedent's real estate to the payment thereof; and further it is "adjudged, ordered and decreed that unless the said D. C. Christian, or someone for him, shall pay the said debts, with interest thereon from July 8, 1952, the date of the said report, and the costs of this suit within thirty (30) days from the entry of this order, then" the commisioners named in the decree "for the purpose, shall offer the said real estate of decedent for sale at public auction on terms of sale specified in the decree."

The only question before this Court on this appeal is whether decedent's brother, R. P. Mann, the plaintiff in this suit, has properly proved the part of his claim evidenced by the two notes in the total amount of $879.67, with interest thereon from July 8, 1952, the date of the report of the commissioner in chancery.

As the solution of this question involves the sufficiency of proof as to the alleged services rendered by plaintiff to decedent during her lifetime, and in particular during her last illness, and the execution of the two notes evidencing plaintiff's claim by the decedent affixing her mark to her signatures on the notes, is largely dependent upon plaintiff's testimony, this record raises the initial question whether plaintiff was a competent witness under Code, 57-3-1, which provides, in part, that "No party to any action, suit or proceeding, nor any person interested in the event thereof, * * *, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased, * ·* *". Certainly, the question whether plaintiff rendered services to the decedent and the nature thereof involves a "personal transaction or communication" between plaintiff and decedent within the meaning of Code, 57-3-1. *Owens* v. *Owens, Adm'r.*, 14 W. Va. 88, 94; *Poling* v. *Huffman,* 48 W. Va. 639, 649, 37 S. E. 526. And the factual questions whether decedent executed the two notes in question by affixing her mark to her signatures and whether at the time of the execution of the notes she was of sufficiently sound mind to

understand the nature of the transaction, in which she was engaged, likewise involve personal transactions within the inhibitions of the statute between the witness and the decedent. *Poole* v. *Beller*, 104 W. Va. 547, 551, 140 S. E. 534, 58 A. L. R. 207.

The plaintiff, being the holder of the two notes upon which his claim is based and a party to this suit, was under the statute incompetent to testify, and such incompetency would have precluded recovery, had timely objection been made to its admission. Beginning with the early case of *Middleton's Ex'r* v. *White*, 5 W. Va. 572, it was for many years the settled law in this jurisdiction that an objection to the testimony of an incompetent witness may be made for the first time in this Court. See *Rose & Co.* v. *Brown*, 11 W. Va. 122; *Martin, Admx.* v. *Smith*, 25 W. Va. 579; *Kimmel, Admr.* v. *Shroyer*, 28 W. Va. 505; *Vanscoy* v. *Stinchcomb*, 29 W. Va. 263, 11 S. E. 927; *Long* v. *Perine*, 41 W. Va. 314, 23 S. E. 611; *Woodville* v. *Woodville*, 63 W. Va. 286, 60 S. E. 140; *Cooper* v. *Cooper*, 65 W. Va. 712, 64 S. E. 927; *Sayre* v. *Woodyard*, 66 W. Va. 288, 66 S. E. 320, 28 L. R. A. (N. S.) 388; *Poteet* v. *Imboden*, 77 W. Va. 570, 88 S. E. 1024, 64 A. L. R. 1161n.

However, in the rather recent case of *Willhide, Executrix* v. *Biggs*, 118 W. Va. 160, 188 S. E. 876, this Court departed from its holding in *Middleton's Ex'r* v. *White*, *supra,* and the kindred cases heretofore cited, and held in point 3 of the syllabus that: "The competence of a witness to give material testimony may not be challenged for the first time in this court, but must be raised and passed upon in the trial court before it can be made the basis of an assignment of error here. The West Virginia cases holding the contrary which are named in the body of this opinion are, in so far as they conflict herewith, expressly overruled." Consistently thereafter the rule stated in point 3 of the syllabus of the *Willhide* case has been adhered to. *Lilly* v. *Bowling*, 120 W. Va. 169, 172, 197 S. E. 299; *Tyler & Arnold* v. *Reynolds*, 120 W. Va. 232, 246, 197 S. E. 735; *Carter* v. *Walker*, 121 W. Va. 81, 85, 1 S. E. 2d 483. As no objection was made to Mann's testi-

mony in the trial court, his incompetency as a witness, though the testimony involves personal transactions with the decedent, cannot be raised in this Court. As we must take the record as we find it, Mann's testimony will be considered on this appeal on the question whether there was sufficient evidence from which the trial court could find, as it did, that the part of plaintiff's claim, which is based upon the two promissory notes in evidence, is valid.

The plaintiff, R. P. Mann, decedent's brother, is a bachelor about seventy-eight years old. After decedent's husband died in the year 1933 or 1934, plaintiff, who had been living with a married niece in Jackson County, went to decedent's home in Monroe County, in February, 1949, where he stayed for about eight months. On October 10, 1949, he returned to Jackson County, and remained there, evidently at the home of his niece, until April, 1950, when, at decedent's request, he returned to decedent's home in Monroe County, remaining with decedent at her home until decedent became so ill during the summer of 1950 that on the advice of Dr. Robert J. Smith, decedent's personal physician, she was removed to a hospital at Hinton, where she died on August 14, 1950. During decedent's stay at the hospital she was cared for by plaintiff.

In February, 1949, decedent had living with her at the Christian home, and until the time she was taken to the hospital, a young girl by the name of Dorothy Mae Graham, about sixteen years of age at that time, who, the record discloses, was a ward of the State, and for whom decedent received compensation from the Department of Public Assistance covering her care and maintenance. Dorothy Mae Graham was a pupil at Red Sulphur District High School, located in Monroe County at Peterstown, during the course of events portrayed by the record in this case.

During plaintiff's stay at the Christian home in 1949, he worked about the Christian home and yard, and helped to maintain a garden near the house. On at least one occasion decedent told plaintiff that he was to be paid for

what he did. This record discloses that plaintiff kept an account, which was at least partial, of the money he personally spent for doctor bills and for feed bills for the cow and chickens, which were kept at decedent's homeplace. During the summer of 1950, the decedent, Lula Christian, became ill, so that her physician Dr. Smith advised her only son, the defendant, D. W. Christian, to arrange for a nurse, which the son did not do. So Dorothy Mae Graham and the plaintiff, according to their testimony, waited on and cared for decedent during this time. On June 14, 1950, decedent, though in a very weakened condition, executed the notes in controversy, payable on demand to the order of plaintiff, R. P. Mann, "or his assigns", which notes were signed by the decedent, Lula Christian, by making an "X" after her name on the notes, in the presence of plaintiff and Dorothy Mae Graham, the latter of whom signed as a witness to decedent's mark.

Dorothy Mae Graham testified, and she is corroborated by plaintiff, that at decedent's request she made out the notes and signed decedent's name to both of them, and that thereafter decedent affixed her mark after each of her signatures.

During decedent's last illness, and after decedent had been removed to the hospital at Hinton, plaintiff sold decedent's cow and the chickens, which were then at decedent's homeplace, and though plaintiff testified that he used the money to pay some of decedent's bills, the administrator asserts in the claim which he filed before the commissioner of accounts that plaintiff did not account for the proceeds of these sales, which claim of the administrator was disallowed in the county court proceeding and by the decree in the equity suit, entered on April 8, 1953, to which this appeal is prosecuted.

The administrator asserts that at the time the notes were executed that decedent was ill, and of such unsoundness of mind that, even if she made her mark to her signatures on the two notes, she did so at a time when she did not know the nature of the transaction in which she

was then engaged; but the evidence on this question conflicts.

According to the testimony of Dorothy Mae Graham and plaintiff, the notes were prepared by the Graham girl, and decedent's name was signed thereto at decedent's request, to which notes decedent affixed her mark; and that at the time the notes were executed, decedent was of sufficiently sound mind to know the nature of the transaction. Dr. Robert J. Smith, decedent's personal physician, testified in answer to the inquiry whether during the month of June, 1950, when decedent executed the two notes to plaintiff, R. P. Mann: "Would you say that she was competent or incompetent to execute notes, checks and other writings," that "I would say she was competent." To the contrary Irene Greene, decedent's close neighbor, testified that she had visited decedent every day for a month or longer before decedent was removed to the hospital at Hinton; that she would talk with decedent on those occasions; that she was wont to take her something to eat; that during the last two or three weeks before decedent was taken to the hospital, on her daily visits with decedent, she found that decedent's mental condition was "bad"; and that decedent "didn't know she was at home, and would ask where she was. She would say the state road wasn't supposed to go in front of her house; and then on one occasion she said there was a fat pig in bed with her, and then one day she was looking down between her bed and the wall and said there was a fat baby down there and she wanted me to get it for her so she could love it."

This conflict in the evidence, bearing on the integrity of decedent's mind at the time she executed the notes, has been resolved by the trial court in plaintiff's favor in the first instance on the writ of error in the proceeding before the county court in the settlement of the administrator's account; and then in the final decree entered on April 8, 1953, to which this appeal is being prosecuted. We cannot say, in view of the evidence adduced in support of plaintiff's claim on the two notes and the evidence

in support of the administrator's position, that the finding of the trial court in the entry of the decree of April 8, 1953, was clearly wrong or against the preponderance of the evidence. *Holt Motors, Inc.* v. *Casto,* 136 W. Va. 284, pt. 1 syl., 67 S. E. 2d 432; *Bennett* v. *Neff,* 130 W. Va. 121, pt. 6 syl., 42 S. E. 2d 793; *Sutton* v. *Sutton,* 128 W. Va. 290, pt. 2 syl., 36 S. E. 2d 608; *Shipper* v. *Downey,* 119 W. Va. 591, pt. 3 syl., 197 S. E. 355. The finding, therefore, will not be disturbed.

The two notes, which evidence plaintiff's claim, are, under the finding of the trial chancellor, valid obligations against decedent's estate. The record discloses that while plaintiff was living at decedent's home, and especially during her last illness at the hospital at Hinton, plaintiff rendered services to the decedent which were vitally necessary to decedent's comfort and well-being, services which her own son failed to furnish for her. The value which the maker of the notes placed on the services rendered by plaintiff constitute the consideration for the two notes. In point 5 of the syllabus of *Bade, Admr.* v. *Feay,* 63 W. Va. 166, 61 S. E. 348, this Court held that: "A promissory note given to a near relative, by a person in declining years, by way of compensation or reward for services rendered and to be rendered, is so much in the nature of a testamentary disposition of property, that, ordinarily, the maker's estimate of the value of the services will not be disturbed on the ground of disparity between the actual value thereof and the amount of the note."

For the foregoing reasons the decree of the Circuit Court of Monroe County, entered on April 8, 1953, is affirmed.

*Affirmed.*