HAZEL M. RUDDLE

*v.*

JESSIE RUDDLE, *et al.*

(No. 10882)

Submitted September 10, 1957. Decided October 22, 1957.

*H. G. Muntzing, James E. Ansel,* for appellant.

*George I. Sponaugle,* for appellee.

RILEY, PRESIDENT:

The appellant, Hazel M. Ruddle, hereinafter designated as the plaintiff, brought this suit against Jessie Ruddle, her mother-in-law, and Ona D. Ruddle, her father-in-law, hereinafter designated as defendants, to enforce specific performance of an alleged oral promise of the defendants to convey to her a one-acre tract of land. Plaintiff's husband, Hansel Ruddle, died before this suit for specific performance was brought, and, while the suit was pending,

Ona D. Ruddle died intestate on February 20, 1956. There-upon the suit was revived in the names of Hazel M. Ruddle, Jessie Ruddle, as administratrix of the estate of Ona D. Ruddle, deceased, Nola Vandevander and Wilda Kimble, the heirs of the decedent, Ona D. Ruddle.

The plaintiff is the widow of Hansel Ruddle, deceased, the latter being the late son of the original defendants in this suit. The plaintiff appeals from a final decree of the Circuit Court of Pendleton County refusing specific per-formance, as prayed for in her bill of complaint.

In her bill of complaint plaintiff alleges that her late husband's parents, Ona D. Ruddle and Jessie Ruddle, who were the joint owners of a large farm situated in Pendle-ton County, had agreed to convey to her and her late husband a one-acre tract of their farm, if plaintiff and her late husband would build a house on the tract of land promised to be conveyed.

In this record it is plaintiff's position that she and her late husband were induced by the promise of Ona D. Ruddle and Jessie Ruddle, to enter into exclusive posses-sion of the one-acre tract of land; and that in reliance upon this promise she and her husband built a house on the lot, which the defendants, it is alleged, have wrongfully refused to convey to her in accordance with such promise.

From the record it appears that the plaintiff and her late husband had planned to buy a home near Franklin, Pendleton County, but that they were induced by Ona and Jessie Ruddle to abandon the idea of buying such a home, upon the promise of Ona D. Ruddle, allegedly made in 1948, that if plaintiff and her husband would build a house on a portion of the home farm of the elder Ruddles, they would make an appropriate "survivorship deed" to plaintiff and her husband for a one-acre tract on the Ruddle farm near the original homestead thereon. Late in 1948 or early in 1949, and after the date of the alleged promise by Oma D. and Jessie Ruddle, the young Ruddles did build their home on the farm of the elder Ruddles. Plaintiff's husband, Hansel Ruddle, excavated for the

basement of the home, and partly, with the assistance of his father, Ona D. Ruddle, cut the logs on the farm of his parents, but Hansel Ruddle alone sawed most of the lumber out of which the house was built and furnished most of the materials therefor. Plaintiff and her late husband hired a contractor to build the house for the sum of two thousand dollars, which included the work and some material. While the house was being built, there was no protest by either Ona D. Ruddle or Jessie Ruddle to the building thereof.

This record discloses that the house cost the plaintiff and her late husband approximately four thousand dollars, and that it was paid for entirely by plaintiff and her late husband—in fact Hansel Ruddle sold his automobile in order to acquire enough money to pay for the house, and plaintiff materially contributed to the building of the house, in the amount of approximately one thousand dollars, represented by compensation received by her for work as a domestic servant over the course of years, during which time she earned six or eight dollars a week, together with room and board.

After plaintiff and her husband had moved into the house, they had the lot in question surveyed, and a plat was delivered to them. Later the lot was entirely enclosed by a fence. Ona D. Ruddle was present when the survey was made, and evidently knew of the enclosure of the lot by a fence, and likewise the defendant, Jessie Ruddle, living nearby at the time the survey was made, evidently knew of it.

Plaintiff's witness, Joseph C. Alt, testified that he worked as a carpenter in the building of the house, and that: "Well, when they got done I was building the steps, putting the steps up to the back porch, Ona come around and set down and was talking to me and told me they had surveyed Hansel's lot off and said as quick as he could get the papers fixed up he was going to make a deed to them."

Another of plaintiff's witnesses, Austin Mowery, a carpenter who worked on the house, testified that at the

time the lot was surveyed decedent, Ona D. Ruddle, was present; and when asked by this witness about running the line, Ona D. Ruddle said: "That he was running that off, giving that to them as their share of the place." No objection or exception was made to this testimony, though counsel for defendants did object to the following question addressed to the witness Mowery because it was leading: "Did he state he was going to deed it to them", which objection not having been ruled upon by the trial court, the witness answered, "He did not."

Without objection plaintiff testified that on one occasion when she was at the home of the elder Ruddles, Ona D. Ruddle promised he would make a deed to the property, allegedly promised to be conveyed, and that the defendant, Jessie Ruddle, likewise made such a promise to both plaintiff and her late husband.

The plaintiff, Hazel M. Ruddle, also testified, without any objection or exception on the part of the defendants or their attorney, that previous to the time she and her late husband started to build the house, in which plaintiff was living at the time of her husband's death, they had planned to buy a home just a short distance from the Town of Franklin in Pendleton County; that in answer to the question: "Just what happened that you did not buy the home near Franklin as you planned," she stated: "Hansel's mother and father said they would give us a lot to build on, and make me a deed, if Hansel outlived me, a survivorship deed. If I died before he did supposed to go to him;" and further in answer to the question: "About when was that agreement made," she stated: "In '48, the latter part, in December." Though later in plaintiff's direct examination an objection was sustained to anything that plaintiff's late husband said, the foregoing testimony was given without any objection.

More specifically bearing on the question of the admissibility of the evidence under the so-called Dead Man's Statute, Code, 57-3-1, the entire alleged transaction was fully established by the testimony of the plaintiff, Hazel M. Ruddle, elicited by defendants' attorney on cross-

examination, and because this testimony fully establishes the alleged transaction and was brought into the record by the defendants' attorney, it is pertinent to the decision of this case that the following questions and answers on cross-examination should be quoted at some length:

"Q. I believe, Mrs. Ruddle, you stated you and Hansel were going to buy a home near Franklin?

"A. We was, out of Franklin.

\* \* \*

"Q. I believe you and Hansel had told Ona and Jessie you were going to buy a home up there?

"A. That is right.

"Q. I believe you stated that this was in 1948, is that right?

"A. Latter part of '48.

"Q. The latter part of the year?

"A. It was in December I reckon '48.

"Q. That is when you were going to buy the home when you told them?

"A. Yes, sir.

"Q. Is that when you were told particularly by Mrs. Jessie Ruddle not to buy a home there that they would give you a lot on which to build?

"A. Right.

"Q. You charge in your declaration that sometime in '49 you were going to buy your home and it was '49 that you were advised not to do that, and that you could have a lot down there, which is right '48 or '49 you were going to buy a home?

"A. I told you I did not know just exactly the year. We were going to buy a home somewhere around there.

"Q. You testified awhile ago it was '48, your bill of complaint says '49, if you know, which is right, would like for you to tell us?

"A. It had to be in the year '48, it had to be late in the fall, '49 is when we started building the house, laid the foundation."

Thereafter, plaintiff's attorney moved that plaintiff's bill of complaint be amended so that the clause "Plaintiff further says in the latter part of '49," shall read: "The latter part of '48," which amendment was made.

After Hansel Ruddle's death and prior to his funeral, Stanley Mitchell, a brother of Hazel M. Ruddle, testified, without objection, that the defendant, Jessie Ruddle, in the presence of Ona D. Ruddle, in the living room of the home of the elder Ruddles, said: "Well, I did hear a statement from Mrs. Ruddle (evidently meaning the defendant, Jessie Ruddle). Hazel was not to worry about the place. They would make her a deed for it."

Likewise Cletus Mitchell, another brother of the plaintiff, Hazel Ruddle, who attended the funeral of Hansel Ruddle, heard the defendant, Jessie Ruddle, say to plaintiff, in the dining room of the Hazel Ruddle home, after the death of Hansel Ruddle, that: "I did hear her make the statement she would see that she (Hazel Ruddle) got a deed."

While it is true that the trial court evidently was of opinion, as disclosed by this record, that the testimony bearing on the alleged transaction, was inadmissible under Code, 57-3-1, this case is fully governed on the question of admissibility of the allegedly objectionable testimony by the case of *Mann* v. *Peck, Admr.*, 139 W. Va. 487, 80 S. E. 2d 518. In the *Mann* case this Court in point 1 of the syllabus applied point 3 of the syllabus in *Willhide* v. *Biggs,* 118 W. Va. 160, 83 S. E. 2d 876; and held in point 2 of the syllabus in the *Mann* case: "The question whether a witness is competent to give material testimony 'in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased, * * *', under the provisions of Code, 57-3-1, must be raised and determined in the trial court, before the competency of such witness may be challenged in this Court on writ of error or appeal." Point 3 of the syllabus in the case of *Willhide* v. *Biggs, supra,* held: "The competence of a witness to give material testimony may not be challenged for the first time in this

court, but must be raised and passed upon in the trial court before it can be made the basis of an assignment of error here. The West Virginia cases holding the contrary which are named in the body of this opinion are, in so far as they conflict herewith, expressly overruled."

This brings us to the question whether this record discloses sufficient consideration to sustain the allegedly parol promise of Ona D. and Jessie Ruddle that the title to the lot, together with the improvements which were placed on the property by plaintiff and her late husband, would be conveyed to plaintiff and her late husband under a "survivorship deed," as Hansel Ruddle's share of his parents' estate. In this regard this case is controlled by the case of *Berry v. Berry*, 83 W. Va. 763, 99 S. E. 79, wherein in point 1 of the syllabus, this Court held: "A court of equity will enforce performance of a parol gift of land, if such gift was made upon a meritorious consideration and the donee has taken possession of the land and improved it"; and in point 3 of the *Berry* case it was held: "To establish such a parol gift against the claim of a contract of sale by the donor and for reimbursement for money expended by him in improvement of the property in question and in the payment of taxes and assessments thereon and costs of insurance and repairs, supported only by his oath and made after dissensions had arisen between the son and his wife, the testimony of the wife supported by two witnesses, proof of expenditure of all the money she had in the construction of a dwelling house on the property, a small town lot, in reliance upon his promise to convey it to her, her exclusive beneficial use and possession of the property for several years, as the place of residence of herself and her family, including her husband, her destitution of means other than the money so expended, and inability or neglect of her husband to provide any other home for his family, are sufficient."

We are, therefore, of opinion that the alleged parol agreement was fully established by the evidence in this case, which was admissible because it was elicited on cross-examination of the plaintiff by defendants' attorney, and

because the allegedly inadmissible testimony was not objected to in the trial court and the parol promise was supported by a sufficient consideration under the holding of this Court in the *Berry* case.

We therefore reverse the decree of the Circuit Court of Pendleton County in refusing to grant specific performance of the alleged parol contract, notwithstanding plaintiff's late husband, Hansel Ruddle, had died, and one of the original defendants, Ona D. Ruddle, had likewise died prior to the introduction of the evidence in this case, and remand this case to the Circuit Court of Pendleton County with directions that a decree granting specific performance to the plaintiff, Hazel M. Ruddle, of the parol promise to convey the land embraced in the survey of the one-acre tract, with the improvements thereon, be entered. In the event the defendants refuse or fail to have prepared and executed a deed in accordance with the oral promise allegedly made by Ona D. Ruddle and Jessie Ruddle, the Circuit Court of Pendleton County is authorized to appoint a commissioner, as an officer of that court, in lieu and in place of said defendants, to execute and deliver a proper deed conveying to the plaintiff, Hazel M. Ruddle, the land embraced in the survey disclosed by this record.

*Reversed and remanded with directions.*

BROWNING, JUDGE, dissenting:

I respectfully dissent from the decision of the Court in this case, and would affirm the decree of the Circuit Court of Pendleton County for reasons hereinafter stated.

Certain fundamental principles of law established by statute and decisions of this Court must be carefully considered in reviewing this record. Code, 36-1-3, the statute of Frauds, and Code, 57-3-1, which is often referred to as the deceased persons' statute, are of unusual pertinence. In *Goff and Goff, etc.* v. *Lowe, et al.*, 101 W. Va. 57, 131 S. E. 870, this Court held that there is no implied author-

ity in one cotenant to act for another, and that kinship alone does not imply agency in the sale of real property.

The status of the parties as of the date of the making of the alleged parol agreement, and as of the date of the trial, is important. According to the record, Ona Ruddle and his wife Jessie Ruddle were the owners in fee of a 244 acre farm situated in Pendleton County, and the parents of three children, Hansel, Nola and Wilda. On September 3, 1947, Hansel married Hazel Mitchell. The parol agreement was alleged to have been entered into in December, 1948, according to the testimony of the plaintiff. Her husband Hansel died on December 9, 1951. After this suit was brought, Ona died February 12, 1956. The trial was held in May, 1956. Thus it may be seen that counsel for plaintiff and defendants as well as the trial chancellor of necessity encountered some delicate evidentiary problems in the trial of this case. Notwithstanding the provisions of the statute of frauds, courts of equity do not hesitate in a proper case to enforce an agreement for the transfer of title to real property, even a parol agreement, where the owner of the land is, at the time the suit is heard, deceased. However, such cases are viewed with suspicion, and the burden is upon the plaintiff to prove his case by evidence which is clear and convincing. *Ice et al.* v. *Ice et al.,* 119 W. Va. 409, 193 S. E. 912.

There are, of course, many other decisions of this Court to the same effect. Particularly is this principle applicable where an oral agreement between a parent and a child is asserted. The evidence in such a case must be stronger than that which would suffice between strangers. It has been said that the evidence of a parol gift from father to child should be direct, positive, express and unambiguous and its terms clearly defined. *Bright* v. *Channels,* 92 W. Va. 93, 114 S. E. 513. Apparently this Court has decreed specific performance upon the basis of a contract between the parties rather than a gift from the parents to the son and daughter-in-law. However, whether it be considered a gift or contract, the decisions

are clear that proof of the gift or of the contract must meet the same stringent requirements. Where entry has been made upon the land and improvements had, it is necessary that it should clearly appear to have been done solely with the view to the agreement being performed. If they are acts which might have been done with other views, they will not take the case out of the statute. *Steenrod's Adm'r. v. W. P. & B. R. R. Co.*, 27 W. Va. 1.

The original bill avers "* * * during the year of 1949, she and her husband, Hansel Ruddle, deceased, decided that they would build themselves a dwelling house in which they would live; that they were approached by the said Defendants, Ona Ruddle and Jessie Ruddle, who told them that they, the Defendants, would *give* the Plaintiff and her husband a lot or parcel of real estate from said farm on which they could build their new house; that the Defendants further promised unto your Plaintiff and her husband that said lot should contain approximately one acre * * *; that the Defendants further promised that they would have said lot surveyed and would deed same to the Plaintiff and her husband whereby the Plaintiff and her husband would each receive a one-half undivided interest in and to said lot with right of survivorship; * * *." (*Italics supplied.*) The plaintiff in her testimony said nothing about any plans she and her husband had to build a house, but these questions were asked, and these answers made by her: Q: "I believe, Mrs. Ruddle, you stated you and Hansel were going to buy a home near Franklin?", A: "We was, out of Franklin."; Q: "Where was it?", A: "Down where the Rexrodes bought. A little bungalow."; Q: "When was it that you were going to buy a home? Remember what year?", A: "I don't remember what year." On direct examination, these questions were asked the defendant Jessie Ruddle, and she made these answers: Q: "Hazel Ruddle testified in 1948 she and Hansel decided to buy them a place down here in Franklin, and you asked them not to, to build down there, and that you would give them a deed for the land, did you make any such state-

ment to Hazel?", A: "No. I did not know a thing about it until she told it."; Q: "About what?", A: "About him going to buy at Franklin. That was the first time I heard it today when she testified."; Q: You did not make any such statement?", A: "No, sir. I did not."

The 4th syllabus point is predicated upon the fact that there was a parol promise by the parents to convey this parcel of land "upon the understanding that the parcel of land promised to be conveyed would be accepted in lieu of the son's share of the promisors' estate, provided the son and daughter-in-law would abandon their intention of purchasing property elsewhere, and the son and daughter-in-law would build a dwelling on the land promised to be conveyed and move into it when completed; * * *" There is no such allegation in the bill, although in her testimony the plaintiff stated in answer to a question: "No. They said they would give Hansel and I an acre, a lot, and a deed to build on and that was to be his part and mine."; By the Court: Q: "You mean by his part, his part of the farm or estate?", A: "Estate I guess. I don't know which they meant."

I have no criticism of the 1st point of the syllabus which is quoted from the 2nd syllabus point of *Mann* v. *Peck, Admr.,* 139 W. Va. 487, 80 S. E. 2d. 518, but believe that it has no application to this case. The *Mann* case and several others cited in the opinion are based upon *Willhide* v. *Biggs,* 118 W. Va. 160, 83 S. E. 2d. 876, which overruled many decisions of this Court to the contrary. However, it is interesting to note that in *Detwiler* v. *Green,* 1 W. Va. 109, it was held that in an action of assumpsit the incompetence of a witness was waived and could not be taken advantage of upon the hearing of the case where counsel had appeared at the taking of depositions and without raising the question of incompetence had cross-examined the witness. Also, in *Cunningham* v. *Porterfield, Adm'r.,* 2 W. Va. 447, the same rule was laid down in an action of debt. The earlier cases were departed from in *Hill* v. *Proctor,* 10 W. Va. 59. In *Willhide* v. *Biggs, supra,* it was held that the witnesses

Biggs and Core, being defendants, were not competent to testify to the actions of the plaintiff's decedent at the time of the accident which resulted in his death. However, at no time was objection made to their competency in the trial court. It is true, as stated in the Court's opinion, that the plaintiff was asked this question and made the following answer in the early part of her testimony without objection by the defendants: Q: "Just what happened that you did not buy the home near Franklin as you planned?", A: "Hansel's mother and father said they would give us a lot to build on, and make me a deed, if Hansel outlived me a survivorship deed. If I died before he did supposed to go to him." However, a few questions later, she was asked this question and the following colloquy occurred: Q: "Did they know you were planning on buying this home near Franklin?", By Mr. Sponaugle (counsel for the defendants): "Object to anything that Hansel said.", By the Court: "Sustained."; then followed these questions and answers: Q: "At any rate, the four of you talked it over in Ona's home about this lot?", A: "That is right."; Q: "What was the understanding about that?", A: "Ona and Jessie said they would *give Hansel a deed.*" (Italics supplied.), by Mr. Sponaugle: "Object to anything that Ona Ruddle said.", By Mr. Muntzing (counsel for plaintiff): "As far as Jessie is concerned it is admissible.", By the Court: "Anything that she said would be admissible.", A: "They said they would make us a deed for an acre of land to build a home on.", By Mr. Sponaugle: "I do object to using the plural 'they'.", By the Court: "Under the rules of evidence, since Mr. Ona Ruddle is dead, you are not permitted to tell what he told you. You are permitted to tell anything that Mrs. Ruddle said. * * *."; Q: "You may finish your statement about the deed.", A: "Well, Mrs. Ruddle said she would make Hansel and I a deed and if Hansel outlived me supposed to be a survivorship deed." Later in her testimony, the following occurred: Q: "Did you have a conversation with Jessie and Ona Ruddle after the death of your husband and before the funeral, in regard to a deed for the property?", A: "I

did."; Q: "What was that conversation and where was it?", A: "Well, when they told me they would make me a deed, we was going up to the cemetery to see where to bury Hansel, and she said 'Quit your worrying, we will make you a deed for your home out there.' ", By Mr. Sponaugle: "Again, I want to object.", By the Court: "You are not permitted to tell what Ona Ruddle said. You may tell what Jessie said.", A: (Continued) "She said she would make me a deed."

In the Court's opinion is this statement: "More specifically bearing on the question of the admissibility of the evidence under the so-called Dead Man's Statute, Code, 57-3-1, the entire alleged transaction was fully established by the testimony of the plaintiff, Hazel M. Ruddle, elicited by defendants' attorney on cross-examination, and because this testimony fully establishes the alleged transaction and was brought into the record by the defendants' attorney, it is pertinent to the decision of this case that the following questions and answers on cross-examination should be quoted at some length: * * *." The questions and answers will not be repeated here. However, no where in that part of the cross-examination of the plaintiff is any reference made to a promise by Ona Ruddle to the plaintiff or her deceased husband Hansel. The 6th question and answer are as follows: Q: "Is that when you were told *particularly by Mrs. Jessie Ruddle* not to buy a home there that they would give you a lot on which to build?" (Italics supplied.), A: "Right." The last question and answer show the purpose of the questioning: Q: "You testified awhile ago it was '48, your bill of complaint says '49, if you know, which is right, would like for you to tell us?", A: "It had to be in the year '48, it had to be late in the fall, '49 is when we started building the house, laid the foundation." By Mr. Muntzing: "We would like to make a motion to amend the bill of complaint where it reads on page two 'Plaintiff further says in the latter part of '49.' We would like to amend so it would read the latter part of '48.", By the Court: "I believe that amendment may be made." Thereafter, counsel for the defendants

pursued the matter no further. The pertinency of this examination is evident since there was a flat conflict, and perhaps a fatal one, between the allegations in the bill and the previous testimony of the plaintiff and her witnesses that the building of the house began in the early part of 1949. If the alleged promise to convey had been made months after the house was under construction, the plaintiff could not have prevailed in this suit.

As heretofore stated, the bill alleges that the defendants: "* * * further promised that they would have said lot surveyed and would deed the same to the Plaintiff and her husband * * *." However, the circumstances under which the survey was made, at the time when the house was substantially completed, is shown by the testimony of Ira Ruddle, plaintiff's witness: Q: "How did you come to survey it?", A: "A dispute between Mr. Ruddle and Mr. Mike Robinson, a dispute at the Run, and Mr. Ona Ruddle called Baker up to run the line and Mr. Ona Ruddle asked me if I would come and help them run this division line off, and when we got through with this line we went in at Ruddle's, Ona Ruddle's and ate lunch. After we got through eating lunch Hansel said to his dad 'What about running the lot around my house?' He called it his house at the time. And he said 'I suppose it will be all right.' And then me and Baker and Hansel surveyed the lot around the house." Certain other testimony of this witness is very material regarding the weight to be given to the testimony of plaintiff's witnesses Alt and Mowery, to which reference is made in the Court's opinion. These further questions were asked the witness and he made these answers: Q: "Did Ona help make the survey?", A: "He was out at the car in the road."; Q: "Did Ona stay at the road all the time?", A: "Yes, sir."; Q: "Was he in the house any time?", A: "Not during that time he was not."; "* * *"; Q: "You are sure Ona Ruddle was not in the house then?", A: "Not during that time he was not, no, sir." The witness Alt was asked these questions to which he made these answers, in addition to the statement of his testimony

contained in the Court's opinion: Q: "Was Hansel there while they were doing the surveying?", A: "Yes, sir."; Q: "Was Hazel there?", A: "Yes, sir, she was painting some ceiling when he was talking to me.", By the Court: "Did Hansel or Hazel hear Ona tell you that?", A: "Hazel was on the porch and I was building the steps. Could not tell you whether she heard it or not." Upon the question of the weight that the trial chancellor gave to the testimony of the witness Alt, regarding the alleged statements against interest of Ona Ruddle on the day of the survey, this testimony upon cross-examination and re-cross-examination of the plaintiff herself is interesting: Q: "I believe you testified on the day the survey was made you were up at Mr. and Mrs. Ona Ruddle's home?", A: "I was."; Q: "Were you up there all day?", A: "I was."; Q: "You were not down at your house at all?", A: "Don't think I was. We washed and was ironing."; By the Court: Q: "But you say you were not down there while the survey was being made, you did not know about that?", A: "No."

As to the testimony of the plaintiff's brothers, Stanley and Cletus Mitchell, with regard to certain alleged statements against interest which the defendant Jessie Ruddle made before and after the funeral of Hansel Ruddle, Jessie Ruddle flatly denied such statements. Particularly as to the testimony of Cletus Mitchell, she was substantiated by other witnesses, at least one of whom was not interested in the outcome of this suit. Likewise, Jessie Ruddle denied any conversation with the plaintiff on the day of Hansel's death with regard to making her a deed for the property.

The alleged statements against interest of the deceased Ona Ruddle and Jessie Ruddle would be entitled to little weight even if undenied. *Gray* v. *Marino, et al.,* 138 W. Va. 585, 76 S. E. 2d. 585. In this case where great doubt is cast upon the truthfulness of such statements, in view of the evidence of the plaintiff herself, as well as one of her witnesses, it becomes very important to consider the testimony of the only other survivor of this

alleged transaction Mrs. Jessie Ruddle, whose testimony is not mentioned in the majority opinion. She was, at the time of the trial, a woman 67 years of age who had lived at Ruddle all of her life. She had a right to be heard. These questions were asked her and she made these answers: Q: "Hazel Ruddle also testified that on the way to the cemetery on Monday morning after Hansel's death that you promised to make her a deed for the house and lot, is that true?", A: "No, it is not."; Q: "Was anything said that morning at all?", A: "It was on Sunday. He died early Sunday morning. We went up to the cemetery to find a lot in the new part of the cemetery, we went over to Mr. Ashby Bowers' to get him to stake the lot off. He lived across from the cemetery. She commenced to cry and said she had no place to stay. I said 'Hazel you can stay out in the house you are in if you want to.' "; Q: "Was anything said about a deed there that morning?", A: "No, sir, not anything."; Q: "Mrs. Ruddle, did you ever, at any time, promise Hazel to make her a deed?", A: "No, I did not."; Q: "Did you ever, at any time, promise Hansel to make him a deed?", A: "No, I did not promise him to. I can tell you what he once said if you will allow me."; Q: "Did Hansel ever have any conversation with you at any time about making him a deed?", (There was an objection to this question which the court sustained.); Q: "You did state you never promised Hansel to make him a deed?", A: "I never promised Hansel or Hazel either." The following questions were asked and answers made without objection: Q: "This house that Hansel built was it built on one of your farming fields?", A: "Yes, it was."; Q: "They have charged here in their bill of complaint that you promised to give them a lot containing approximately one acre, did you promise them that you would give them a lot of land containing one acre?", A: "No, I did not. He asked for a place to build a house."; Q: "He suggested that he have a house there?", A: "We told him he could build it if he wanted to. He wanted a home, a place he could stay." On redirect examination, Mrs. Ruddle was asked these questions and made these

answers without objection: Q: "I might ask you, Mrs. Ruddle, do you remember whether Ona helped do any work on the house?", A: "Well, I don't think he did anything in the way of carpenter work. He was not a carpenter. He did go out there sometimes. Don't know whether he did anything outside of furnishing the timber and furnished the team, one horse, and Ira Ruddle and he had one, and we lived as neighbors and worked together, and also furnished a hand to help cut the logs."; Q: "He paid that hand himself?", A: "Yes, sir."

Assuming that the competency of the plaintiff to testify to the alleged transaction between her and the deceased Ona Ruddle was not raised and passed upon in the trial court, and assuming further that all of the testimony that she gave was admissible, I cannot agree with the statement contained in the Court's opinion that: "* * * the entire alleged transaction was fully established by the testimony of the plaintiff. * * *" Certainly there was a decided and flat conflict in the testimony concerning the alleged parol agreement, by the only two persons living at the time of the trial who were present when it was alleged to have been entered into. Furthermore, the contradiction of some of plaintiff's witnesses by another witness for the plaintiff, and by the plaintiff herself, accentuates the conflict in the evidence. That conflict has been resolved by the trial chancellor, and unless this Court is to overrule many cases heretofore decided, it cannot reverse the trial chancellor in this cause.

In the recent case of *Lantz, et al.* v. *Reed, et al.*, 141 W. Va. 204, 89 S. E. 2d. 612, this Court said: "The finding of the circuit court that the proof adduced by the plaintiffs did not establish the alleged contract between them and Kisner is neither clearly wrong nor against the preponderance of the evidence. The general rule, often stated and consistently adhered to and applied by this Court, is that in equity the finding of fact of the trial chancellor will not be disturbed on appeal unless it is clearly wrong or against the preponderance of the evi-

dence. * * *" Eighteen decisions of this Court are there-
after cited in support of that statement. The 3rd syllabus
point in *Mann* v. *Peck, Admr., supra,* quoting from *Holt
Motors, Inc.* v. *Casto,* 136 W. Va. 284, 67 S. E. 2d. 432,
follows: "The findings of fact of a trial chancellor, based
on conflicting evidence, will not be disturbed on appeal,
unless clearly wrong or against the plain preponder-
ance of the evidence."

The finding of this Court that the competency of the
witness Hazel Ruddle was not raised and determined in
the trial court is based upon the fact that counsel for the
defendants did not immediately object to one answer
which she made to the effect that "Hansel's mother and
father" made a certain promise to her and her deceased
husband. The record is clear that shortly thereafter the
competency of this witness to testify as to any communica-
tion between her and the deceased Ona Ruddle was raised,
and that court held that it was improper for her to so tes-
tify. There is no other evidence in the record that would
justify a finding that Ona Ruddle made any promise with
regard to the conveyance of this parcel of land. This trial
was held before the chancellor himself, and in such a situa-
tion a "motion to strike" would not be necessary. In all
of the cases, with one exception hereinafter noted, that
have been decided by this Court subsequent to *Willhide* v.
*Biggs, supra,* the competency of the witness to testify was
not challenged at any time during the trial. The other
cases are *Mann* v. *Peck Admr., supra; Lilly, et al.* v. *Bowl-
ing, et al.,* 120 W. Va. 169, 197, S. E. 299; *Tyler and Arnold*
v. *Reynolds, et al.,* 120 W. Va. 232, 197 S. E. 735; *Carter* v.
*Walker, et al.,* 121 W. Va. 81, 1 S. E. 2d. 483. However, in the
recent case of *Clark* v. *Douglas,* 139 W. Va. 691, 81 S. E.
2d. 112, this Court reversed a judgment for the plaintiff
upon the ground that certain testimony of the plaintiff
was in violation of Code, 57-3-1, as amended, the deceased
person's statute. In the opinion, this statement appears:
"No objection was made to the admission of the quoted
statement of plaintiff at the time it was offered. Later,
in the course of the trial, defendant moved 'that the testi-
mony of Helen Clark about the situation that she was in

at the time that she was shot be stricken from this record.' The motion was overruled. The motion was renewed during the course of the trial and again overruled. * * *" Further in the opinion, the Court states: "Plaintiff points out that no objection was made to her evidence at the time it was received, and contends that the motion to strike did not sufficiently point out that part of the testimony sought to be stricken from the record. * * *" This Court said: "There is no merit in the contention."

In 88 C.J.S., Trial, §117, is this relevant statement, supported by cases cited in the footnotes: "An objection to the introduction of testimony must be made in apt time or it will be deemed to have been waived. However, the time when an objection to the testimony of a witness must be made in order to be timely may depend on the situation presented in a given case and the court should not adopt a strict rule thereon, although such objection must be taken before the case gets beyond recall." This further statement appears in 88 C.J.S. §118: "On the other hand, since the object of the rule is to prevent a party from intentionally withholding his objection until he discovers the effect of the testimony and then interposing an objection if it is unfavorable, the rule is to have a reasonable interpretation and is to be reasonably applied. * * *" Of particular pertinence to the vital question and answer in this case is 88 C.J.S. §136: "As a general rule, where a party consents to the introduction of evidence or where no objection is made to evidence when offered, or to a question when asked, or no proper and timely objection is made, a motion made, after the evidence is admitted or the question answered, to strike it may properly be denied; but the motion should ordinarily be granted, without a previous objection, where there was no opportunity to object or the objectionable character of the evidence was not apparent, or failure to object is otherwise excusable."

The witness was competent to testify as to what Hansel's *mother* said with reference to the lot, but she was not competent to testify as to what his *father* said with refer-

ence to that matter, thus providing a reasonable excuse for no objection being made to the competency of the witness at that moment, although it is obvious that a few minutes later, as heretofore related, firm objection was made to any statement made to the witness by Hansel's father. The trial chancellor was well aware that questions had been raised on both sides as to the competency of witnesses to give certain testimony because of the complicated situation arising out of the death, prior to the trial, of Ona and Hansel Ruddle. After the defense rested, this statement appears in the record by the court: "As to any transactions with either of the deceased parties, we will take that under advisement." All of these matters were given careful consideration as shown by the trial court's opinion which was made a part of the record in this case. In it he stated: "Plaintiff, Hazel Ruddle testified that she and her husband in 1948 were about to buy a home near Franklin and that Hansel's parents agreed that if they would build on the home farm, a deed would be made to them. Of course, this testimony is improper so far as it relates to Ona Ruddle, now deceased; * * *"

If the trial chancellor had not been satisfied that the competency of the witness Hazel Ruddle to testify, as heretofore indicated, had been raised and determined in the trial court, he should have permitted the defendant Jessie Ruddle to testify to the same personal transactions and communications with the deceased Ona Ruddle. In *Painter, Admr.* v. *Long, et al.,* 69 W. Va. 765, 72 S.E. 1092, the 3rd syllabus point states: "* * * if the widow testifies to personal transactions and communications between the defendant and the decedent, the defendant may as a witness in his own behalf speak fully of the same." In the opinion, it was stated that: "The widow of the decedent was introduced as a witness for plaintiff, the administrator. She testified as to personal transactions and communications between defendant and decedent at the time of the making of the note. Her testimony along this line tends to establish that defendant placed his signature to the note. The introduction of her testimony as to these personal transactions and communications raised the pro-

hibition against defendant's testifying as to the same personal transactions and communications. * * *. When she testifies against defendant as to his personal transactions and communications with the decedent, the door is then opened, by the terms of the statute, for defendant to speak of the same personal transactions and communications. Relevant testimony by defendant which would have rebutted the testimony of the widow in this regard, and the inferences to be drawn therefrom, was excluded at the trial, over defendant's objection. * * *" Similarly in this case, relevant testimony of Jessie Ruddle was excluded over the plaintiff's objection. *Painter, Admr.* v. *Long, et al., supra,* was an action at law and tried before a jury. At the end of the opinion is this further statement: "* * * We cannot take the conflicting evidence introduced and the evidence that should have been admitted and now pass on the whole as jurors. That course would be virtually a denial of trial by jury. We reverse the judgment, set aside the verdict, and award a new trial." Since this is an equity cause, the defendants were not accorded that consideration. In reversing the decree of the circuit court, this Court stated: "* * * and remand this case to the Circuit Court of Pendleton County with directions that a decree granting specific performance to the plaintiff, Hazel M. Ruddle, of the parol promise to convey the land embraced in the survey of the one-acre tract, with the improvements thereon, be entered. * * *"

In the recent case of *Gray* v. *Marino, et al., supra,* this quotation from 17 M. J., Specific Performance, §101, appears in the opinion of a unanimous Court: "It is a well-established principle of equity that, in order to entitle one to specific performance, all the material provisions of the contract must be distinctly and clearly proven. Equity will not enforce a doubtful contract, for fear of doing a greater wrong by doing so than by leaving the parties to their legal remedy. Accordingly, * * * if it be parol, the proof must be so clear, cogent and convincing as to leave no doubt in the mind of the chancellor that the particular contract as averred was made, and its terms and conditions must be clearly shown. * * *", citing authority.

*Berry* v. *Berry, et al.,* 83 W. Va. 763, 99 S. E. 79, cited in the Court's opinion, was a suit between a father-in-law and his daughter-in-law in which it was held, upon the facts in that case, that the relationship existing between them was sufficient consideration for a parol *gift* of land. In the opinion, the Court said: "This was a transaction between a man and his daughter-in-law, making provision for his seemingly helpless or worthless son and his helpless grand children, as well as for her, and in which she contributed, *not only the greater part of the money, but everything she had.* The relationship constituted a very strong incentive to a *gift* and the circumstances strongly tend *to negative the theory of a contract.* She had nothing with which to perform *a contract of purchase,* nor any hope of future ability to perform it, and that he knew as well as she did. The son, for some reason presumably known to him, had neither provided a home nor support for himself and his family. It is altogether improbable that the plaintiff relied upon him *as a party in the contract.* * * *" (Italics supplied.)

The relationship of the parties in this case would have constituted a meritorious consideration if the decree had been sought upon the basis of a parol gift of the land in question, and the gift had been proved, "by evidence full, clear and convincing." However, it is not possible to determine from the bill and the evidence whether the plaintiff relied upon a parol gift or a parol contract for the relief she sought. The Court found in the 4th syllabus point, as heretofore stated, that the parol promise was upon "the understanding that the parcel of land promised to be conveyed would be accepted in lieu of the son's share of the promisors' estate, provided the son and daughter-in-law would abandon their intention of purchasing property elsewhere, * * *."

In 17 M. J., Specific Performance, §21, it is stated that: "In order that a court of equity may specifically enforce a contract for the sale of real estate, the first essential is that the contract shall be established by competent proof to be clear, definite and unequivocal in all its terms. Moreover,

the contract proved must be the contract charged in the bill.", citing several West Virginia cases.

I would affirm the decree of the Circuit Court of Pendleton County denying the relief sought in this suit.