THE FIRST NATIONAL BANK OF RONCEVERTE, *etc.*, *admr.*

*v.*

JOHN WADE BELL, JR., *et al.*

(No. 13497)

Decided June 10, 1975.

*Lively, Light & Bias, William T. Lively, Jr., Ralph D. Keightley, Jr.* for appellant.

*Goodwin, Goodwin, Bryan & Lobert, Joseph R. Goodwin* for appellees.

HADEN, CHIEF JUSTICE:

This is an appeal by the First National Bank of Ronceverte, administrator of the estate of Mary K. Bell, deceased, from a final order of the Circuit Court of Mercer County entering judgment for John Wade Bell, Jr. and Norman B. Blake, and overruling the Bank's motion to set aside the verdict and grant it a new trial.

The civil action generating this appeal was one brought by the Bank to recover possession of certain securities which were alleged to be assets of the decedent's estate and to be withheld wrongfully from the administrator by the defendants. Bell and Blake claimed ownership to the personal property in issue by reason of a *causa mortis* gift. In addition to denying the allegations of the complaint, the defendants counterclaimed for a ruling which would compel the administrator to formally transfer the securities, by endorsement, to them.

During the pretrial discovery process, the Bank propounded interrogatories to Bell and Blake seeking dis-

covery of, *inter alia*: (1) the time and place of the alleged parol gift; (2) the names of persons present when the alleged gift was made; (3) the names of all competent witnesses, other than the defendants, who could testify regarding the alleged gift; and (4) requesting any "other admissible evidence" concerning the alleged gift. The responses pertinent to this appeal are contained in the answers to the fourth interrogatory in which Bell and Blake extensively recited the circumstances of the gift transaction, including conversations and occurrences had with the deceased alone.

Based upon the responses tendered in answer to the interrogatories, the Bank moved for summary judgment asserting that Bell and Blake were "without any competent proof of the alleged gift ... and that any testimony by them as to said gift would be prohibited by the provisions of Chapter 57, Article 3, Section 1 of the Code of West Virginia, as amended, relating to the testimony of an interested person as to any transaction or communication with a deceased person."

The trial court "Dismissed and Denied" the Bank's motion for summary judgment and ruled that the plaintiff had relied upon the defendants' answers to its interrogatories and, thereby, "waived any objections it might have had to the testimony of the defendants concerning transactions or communications with the deceased, Mary K. Bell." Subsequently, the lower court conducted a pretrial conference in which the issues of the case were clarified and limited for trial. Nowhere in the transcript of the pretrial conference does it appear that the Bank reasserted its contentions that the substance of Bell's and Blake's answers to interrogatories would be rendered incompetent as evidence if proffered by testimony at trial.

When the case later was tried, the Bank's case in chief was adduced wholly from the testimony and exhibits of William M. Dickson, the Bank president. On direct examination, Mr. Dickson described the circumstances relating to the defendants' obtaining a safety deposit box

at the Bank for the safekeeping of the securities. The box lease agreement, prepared by Mr. Dickson, designated Mrs. Bell as lessee and the defendants as joint deputies. The lease contained the signatures of Bell and Blake but it had not been executed by the decedent. Also on direct examination, Mr. Dickson was questioned concerning any discussion he may have had with defendants regarding the circumstances of the lease arrangement. He testified that when the defendants came to the Bank, they said they "had some things that belonged to Mrs. Mary K. Bell; they had placed Mrs. Bell in the hospital; they thought she was seriously ill, ... (and) [t]hey wanted to place this in a safekeeping place so that she would have access to it when she recovered and returned to her home from her illness."

Mr. Dickson also testified that, following Mrs. Bell's death, he received a letter from Bell and Blake. He then volunteered the contents to the jury, which are as follows:

"We, the undersigned, John Wade Bell, Junior, and Norman B. Blake, have in our possession certain papers representing bank deposits and common stocks which were unconditionally given to us by the late Mrs. Mary Kline Bell (Mrs. J. Wade Bell, Senior) more than one week prior to her demise.

"On June the twenty-fifth, 1971, at approximately ten a.m. she called us to her bedside, handed these papers to us, and told us to divide them.

"As the two survivors who were closest to her during the last two years of her life, it is now apparent to us ... that she made this gift in anticipation of death, that she had given the matter considerable thought, and that it was her incontestable desire for us to have this portion of her possessions.

"We respectfully request that you, as Administrator, sign these papers over to us in accordance with her wishes...."

During cross-examination, and without objection by counsel for plaintiff, Dickson was interrogated with regard to statements made to him by defendants recounting their transactions or communications with Mrs. Bell.

In the presentation of the defense, Bell and Blake testified, again without objection, that Mrs. Bell summoned them (her stepson and nephew) to her bedside shortly before her departure for the hospital, handed the package of papers containing the property in question to Mr. Blake and said, "Here. You two boys take these and divide them between you."

At the conclusion of all the evidence, the Bank moved for a directed verdict on several grounds, none of which alluded to the competency of the defendants as witnesses in regard to their conversations with the decedent. In this regard it is noteworthy that defense counsel responded to his adversary's contention that Mrs. Bell lacked donative intent when she gave the securities to the defendants, with a further allusion to the decedent's communication as related by the defendants: "You two boys take these and divide them". Again, there was no objection or response by plaintiff's counsel that such testimony was incompetent and the Bank's motion for directed verdict was overruled. The jury thereafter found for the defendants and the court overruled the Bank's motion to set aside the verdict as being contrary to the law and the evidence.

On this appeal, the Bank contends that the trial court's denial of its motion for summary judgment was reversible error because Bell's and Blake's defense was based wholly upon testimony rendered incompetent by the "dead man's statute" and that its exception to the court's erroneous ruling preserves the error for appeal. The appellees contend, to the contrary, that the Bank waived and abandoned the error, if any, relating to the competency of the evidence of the deceased's conversations with them by introducing evidence of such conversations in its case in chief and by failing to object to the introduction of such conversation through the testimony

of Bell and Blake at trial. For reasons which will become apparent, we hold that the Bank did waive and abandon its objections to the competency of evidence relating to conversations with the deceased.

Since 1936, it has been settled in this jurisdiction that incompetency of a witness under the "dead man's statute" must be raised by objection in the trial court as a prerequisite to the consideration of the question on appeal:

> "The competence of a witness to give material testimony may not be challenged for the first time in this court, but must be raised and passed upon in the trial court before it can be made the basis of an assignment of error here. The West Virginia cases holding the contrary which are named in the body of this opinion are, in so far as they conflict herewith, expressly overruled." *Syllabus* point 3., *Willhide v. Biggs*, 118 W. Va. 160, 188 S.E. 876 (1936).

*See, Carter v. Walker*, 121 W. Va. 81, 1 S.E.2d 483 (1939); *Mann v. Peck*, 139 W. Va. 487, 80 S.E.2d 518 (1954); *Ruddle v. Ruddle*, 143 W. Va. 83, 101 S.E.2d 440 (1957). *Accord: First National Bank v. Tate*, 116 W. Va. 138, 178 S.E. 807 (1935).

The trial transcript of this case is devoid of any objection by the Bank to defendants' testimony concerning their transaction or communication with Mrs. Bell. Likewise, the transcript does not demonstrate the assertion of any motion to strike such evidence after it had been received. Hence, the competency of such witnesses, having not been challenged during the trial, was waived unless the plaintiff's assertion of the "dead man's statute" prior to trial, on motion for summary judgment, preserved the error for this Court's ruling.

The juridical rules providing for determinations of the admissibility of evidence and the competency of witnesses to testify were not materially changed by the adoption of the West Virginia Rules of Civil Procedure. One Rule, however, encourages, rather than restricts, admis-

sibility. The purpose and effect of Rule 43(a), R.C.P., as observed in West Virginia Rules, Lugar & Silverstein (1960), "is a moderate liberalization of the former practice, by combining the legal and equitable rules referred to . . . and requiring application of the rule which favors admissibility." *Id.* at 352.

Early on, this Court ruled that an objection to the competency of a witness must be made and the point saved, or notice of intention to except to the ruling of the court admitting the witness must be given, before the jury retires, notwithstanding an objection stated prior to trial:

> "An objection to the admissibility of a witness must be made and the point saved, or notice of intention to except to the ruling of the court admitting the witness must be given, before the jury retires. Therefore it is not error in a circuit court to refuse to set aside a verdict and grant a new trial, upon the ground of the inadmissibility of a witness who was sworn, after he had been objected to by the defendant, on his *voir dire,* and after which the counsel for the defendant stated that if the witness were regarded as competent he must submit, whereupon the witness was sworn in chief without further objection, and no notice of intention to save the point by bill of exception was then given." *Syllabus, Cunningham v. Porterfield, Adm'r.,* 2 W. Va. 447 (1868).

In that opinion, the "obvious" reason given for the rule was that, "if the objection had been saved by exception, the plaintiff might have proved the same facts by other witnesses, and thus have avoided the objection." *Id.* at 448. This, apparently, settled the issue in this State, as there are no later cases in point.

Under the law of this jurisdiction, the competency of testimony said to offend the provisions of the "dead man's statute" is to be determined, apparently, when the testimony is offered at trial. *See, Sayre v. Woodyard,* 66 W. Va. 288, 66 S.E. 320 (1909); *Vanscoy v. Stinchcomb,* 29 W. Va. 263, 11 S.E. 927 (1886); *Seabright v. Seabright,*

28 W. Va. 412 (1886); *Zane v. Fink*, 18 W. Va. 693, *syllabus* point 9. (1881), which hold that competency as to interest is tested, not at the time when a *deposition* is actually taken, but at the time when it is offered into evidence. It takes but little effort to analogize to the facts at hand: Although tested prior to trial by a summary judgment motion, the competency of, or admissibility of, certain evidence alleged to be controlled by *W. Va. Code* 1931, 57-3-1, as amended, is to be determined when the evidence is offered at trial, whether offered in the form of answers to interrogatories, depositions or "live" testimony from a witness. *Cf.* Rule 32(c)(1), W. Va. R.C.P.

Further, as previously noted, the Bank's president, Dickson, volunteered the contents of the Bell and Blake letter recounting their conversations with the deceased. In itself, this presentation of evidence by the administrator may have effected a waiver of the right to object on the basis of the "dead man's statute" and opened the transactions with the deceased for complete inquiry. *See, Holland v. Joyce* W. Va., 185 S.E.2d 505, 511 (1971); *Ogdin v. First National Bank*, 103 W. Va. 665, 138 S.E. 376 (1927); But compare, *Coleman v. Wallace*, 143 W. Va. 669, 104 S.E.2d 349 (1958).

Although we regard the foregoing discussion to be dispositive of this appeal, the pervading issue at trial was whether Mrs. Bell's transfer of her securities to her stepson, John Wade Bell, Jr., and her nephew, Norman Blake, operated as a valid *causa mortis* gift. Such a gift must be proved by clear and convincing evidence. *Dickeschied v. Exchange Bank*, 28 W. Va. 340 (1886). The jury was so instructed. The elements required to sustain such a gift are well stated in *Grace v. Klein, Admr.*, 150 W. Va. 513, 517, 147 S.E.2d 288, 291 (1966):

> "Only personal property may be transferred by such gift. The donor must make the gift in contemplation of death, either at his last illness or while he is in other imminent peril; he must give up all dominion and control over the subject of the gift so that it may belong to the donee presently, as his own property; the donor must make

> an actual delivery of the thing given or a delivery of the means of getting immediate possession and enjoyment of the gift."

And, of course, the donee must accept the gift. *Dickeschied v. Exchange Bank, supra.*

Although some of the evidence concerning the ownership of the subject of the gift was equivocal and disputed, the jury resolved the factual questions in favor of the appellees and we are of the opinion that all elements of proof required to satisfy a valid *causa mortis* gift were present. In this holding, we are guided by a salutary rule:

> "In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true." *Syllabus* point 3., *Walker v. Monongahela Power Company*, 147 W. Va. 825, 131 S.E.2d 736 (1963).

The judgment of the Circuit Court of Mercer County is affirmed.

*Affirmed.*