447 S.E.2d 583

**STATE of West Virginia, Plaintiff, Below, Appellee,**

v.

**Ronald DILLON, Defendant Below, Appellant.**

No. 21807.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 1994.

Decided July 20, 1994.

---

Michele Rusen, Pros. Atty. of Wood County, Parkersburg, for appellee.

Joseph W. McFarland, Jr., Hague & McFarland, Parkersburg, for appellant.

WORKMAN, Justice:

This case is before the Court upon the appeal of Ronald Dillon ("Appellant") from the November 9, 1992, final order of the Circuit Court of Wood County, sentencing the Appellant to two consecutive one to five

year terms in the state penitentiary, based upon his September 30, 1992, jury conviction for two counts of delivery of a controlled substance (marijuana). The Appellant alleges the following assignments of error: 1) the trial court erred in failing to grant the Appellant's motion for a new trial; 2) the investigation leading to the Appellant's arrest was so outrageous that it violated the fundamental concept of due process and fairness; 3) the evidence was insufficient to support the jury verdict; 4) the Appellant was denied an opportunity to call witnesses; and 5) the Appellant was denied a fair and impartial trial. Based upon a review of the parties' briefs and arguments, the record, and all other matters submitted before this Court, we find that no error was committed by the circuit court and accordingly, we affirm the Appellant's convictions.

## I.

### FACTS

The Appellant's conviction was based upon two separate drug transactions which occurred on January 8 and January 11, 1991, respectively, and which were electronically recorded.[1] At the time these transactions occurred, the Appellant was a cab driver for C & H Taxi ("C & H") in Parkersburg, West Virginia. C & H was under investigation by the Parkersburg Narcotics Task Force ("Task Force")[2] because of an anonymous tip that the Task Force received in January 1991, indicating that drivers for C & H were selling illegal drugs from their cabs. Task Force Officer Donald Dougherty testified that in order to investigate the anonymous tip, the Task Force sought undercover individuals to help expose the illegal activities.

One such individual used by the Task Force was Sharon Godbey, who had been arrested for prostitution in November 1990 by the Parkersburg Police Department.[3] Officer Dougherty stated that during Ms. Godbey's initial interview with the Task Force, she identified the Appellant as a low-level drug dealer.

On January 8, 1991, Ms. Godbey informed Officer Dougherty that she had been in contact with the Appellant and that he had agreed to help her obtain marijuana. Officer Dougherty testified that Ms. Godbey also stated that she needed $320 for the deal; $260 for one ounce of marijuana and $40 for the Appellant brokering the deal.[4] According to Officer Dougherty, Ms. Godbey consented to wear an electronic surveillance device, commonly referred to as a body wire, to record the transaction. Officer Dougherty also stated that before fitting Ms. Godbey with the body wire, she was searched for drugs. After Ms. Godbey put on the harness containing the wire, Task Force agents gave her $320 and took Ms. Godbey to an area near Seventh Street in Parkersburg to make the buy.

Later that same night at 10:11 p.m., Officer Dougherty recorded a conversation between Ms. Godbey and the Appellant which occurred while Ms. Godbey and the Appellant were in the Appellant's cab. During this conversation, the Appellant confirmed the terms of the drug deal exactly as Ms. Godbey had previously related to the Task Force. Officer Dougherty testified that after exiting the Appellant's cab, Ms. Godbey met with him, as well as Task Force Officer E.G. Board, and told them that the Appellant left to retrieve the marijuana and he would meet

1. The electronically recorded conversations from both the January 8 and January 11, 1991, drug deals between the Appellant and Sharon Godbey, a police informant, were introduced in evidence during the State's case-in-chief. The trial court ruled that the tapes were admissible, notwithstanding the fact that Ms. Godbey failed to appear and to testify at trial, even though the State had served her with a subpoena.

2. The Task Force was an interdepartmental unit, involving members of the Parkersburg Police Department, the Wood County Sheriff's Department, the West Virginia Department of Public Safety, the Vienna Police Department and federal

law enforcement agencies, charged with investigating the drug trade and other organized crime activities in Wood County.

3. Officer Dougherty testified that in exchange for Ms. Godbey's assistance in making undercover drug buys and introducing agents to narcotic dealers, her prostitution charges were dismissed.

4. While Officer Dougherty's testimony indicated that the Task Force gave Ms. Godbey $320, the record fails to indicate what happened to the remaining $20.

with her later that night to make the delivery. Meanwhile, surveillance units followed the Appellant to Crestview Manor, an apartment complex on Parkersburg's south side. Officer Dougherty testified that at approximately 10:45 p.m., the Appellant returned to the Seventh Street location. At 10:50 p.m., Officer Dougherty recorded another conversation between Ms. Godbey and the Appellant concerning the drug transaction, but no drugs were exchanged at this time. Officer Dougherty stated that after this conversation ended, Ms. Godbey exited the cab and the Task Force surveillance team watched the Appellant drive away but, fearing discovery, did not follow him.

Officer Dougherty next observed the Appellant at 12:45 a.m., parking his cab in front of a bar on Mary's Street in Parkersburg. At this time, both Officer Dougherty and Task Force Officer Bruce Schuck testified that they saw Ms. Godbey walk over to the Appellant's car and observed the Appellant pass some item to Ms. Godbey out of the window of his cab.[5] At 12:48 a.m., Ms. Godbey met with Officer Dougherty and gave him a plastic bag containing a green leafy substance, later identified by Officer Terry Montgomery of the Department of Public Safety forensics lab ("forensics lab") as marijuana.

The next drug transaction occurred on January 11, 1991. Officer Dougherty testified that Ms. Godbey came to the Task Force office with another prospective drug buy involving the Appellant. She told Officer Dougherty, as well as other agents present, that she had been in contact with the Appellant, and he had agreed to get more marijuana for her. Officer Dougherty told Ms. Godbey to call C & H and ask the Appellant to call her back at a number connected to the Task Force office. The Appellant called Ms. Godbey at that number at 5:40 p.m., and the two engaged in a conversation which was recorded. During the telephone conversa-

tion, the Appellant agreed to obtain another ounce of marijuana for $330; $280 for the drugs and $50 for the Appellant for brokering the deal. The Appellant asked for the money up front, agreeing to meet Ms. Godbey on Seventh Street that evening to get the money. Officer Dougherty testified that before the arranged meeting, he wired Ms. Godbey, searched her for drugs, gave her money for the buy and took her to Seventh Street.

On the same day, Officer Dougherty stated that since the Task Force had failed to see any sign of the Appellant by approximately 8:45 p.m., they directed Ms. Godbey to call the C & H dispatcher and request that the Appellant meet her at the Seventh Street location. At 8:55 p.m., Officers Dougherty and Schuck both testified that they saw the Appellant and another person arrive at the designated location in the Appellant's taxi.[6] The officers also observed Ms. Godbey get into the cab and speak with the Appellant. During the conversation, which was also recorded, Ms. Godbey and the Appellant discussed the drug deal and exchanged money only at this time. According to Officer Dougherty, after completing the exchange of money, Ms. Godbey got out of the cab and returned to a car occupied by Officers Dougherty and Board. Officer Schuck testified that the Appellant and the third person subsequently departed the area, but were followed by Task Force agents, including Officers Schuck and Dougherty, along with Ms. Godbey, to Crestview Manor. Officers Dougherty and Schuck stated that after confirming the Appellant's destination, they returned Ms. Godbey to the target area. The officers testified that at 10:15 p.m., the Appellant also returned to the target area and picked up Ms. Godbey. Upon the Appellant's return, Officers Dougherty and Schuck did not observe the other person in the cab. Officer Dougherty stated that, once Ms. Godbey got into the car, he recorded the Appel-

---

5. The record is silent as to Ms. Godbey's whereabouts between 10:50 p.m. when she exited the Appellant's cab and 12:45 a.m. when she again met with the Appellant.

6. The Appellant identified the third person as Mike West, who was the Appellant's nephew.

Mr. West was killed in a car accident the night after the first day of trial and therefore, did not testify at trial. The Appellant contends that during this transaction, it was Mr. West and not the Appellant who conducted the drug transaction.

lant telling Ms. Godbey that he was going to pick up the marijuana. Officer Dougherty further testified that the Appellant took Ms. Godbey to Crestview Manor, where the two engaged in further recorded conversation about the marijuana transaction.

At Crestview Manor, Officer Dougherty stated that he observed the Appellant leave his cab and enter the apartment complex, while Ms. Godbey stayed in the cab. Officer Dougherty testified that the Appellant returned to the cab at 10:25 p.m., and drove Ms. Godbey back to the target area, dropping her off in the Subway parking lot. Officers Dougherty and Schuck stated that the Appellant once again left the target area and went to a bar. At 11:08 p.m., the Appellant returned to the target area and met Ms. Godbey, according to the officers' testimony. The officers then saw Ms. Godbey enter the Appellant's cab. Officer Dougherty testified that he proceeded to record further conversation between Ms. Godbey and the Appellant regarding the drug sale. At 11:10 p.m., Ms. Godbey left the Appellant's cab, according to Task Force Officer Deem's testimony. Officer Deem also saw Ms. Godbey enter the Subway sandwich shop and visit the ladies restroom. After leaving the restroom, Ms. Godbey met with Officer Deem and gave him a plastic bag containing what was later confirmed by the forensics lab to be marijuana.

In addition to the officers' testimony and the tape recorded drug transactions, the State also introduced in evidence a statement which the Appellant gave to Officers Dougherty and Schuck on June 4, 1991,[7] in which the Appellant admitted that he sold drugs to Ms. Godbey for money.[8]

The Appellant relied upon the entrapment defense. As part of his defense, John Rader, a cab driver who worked with the Appellant, testified that he knew Ms. Godbey, and that she often requested that the Appellant pick her up in his cab. Mr. Rader also testified that Ms. Godbey told him that she was angry with the Appellant because the Appellant refused to let her charge rides any longer, and she planned on getting the Appellant back for this.[9]

Additionally, the Appellant testified during trial that on June 4, 1991, he was dispatched to an old ice house, where he was met by Officer Schuck, who informed the Appellant that he had called the cab. Officer Schuck directed the Appellant to pull into a parking lot. Once in the parking lot, they picked up Officer Dougherty and another officer whom the Appellant could not identify. The Appellant testified that the officers began asking him about drug deals. The Appellant also stated that prior to their questioning, the officers failed to advise him of his *Miranda*[10] rights. He stated that he denied telling the officers that he was doing drug deals.

The Appellant further testified that since November 1990, Ms. Godbey had asked him ten or eleven times to buy drugs, but that he had refused her requests, with one exception. The Appellant then testified that he had agreed to procure drugs for Ms. Godbey through Mike West in November 1990, when she threatened to tell the Appellant's wife

---

7. The trial court conducted a suppression hearing regarding this statement prior to its admission at trial, based upon the Appellant's contention that the statement was made in violation of his Fifth Amendment right. During the hearing, Officer Schuck testified that the Task Force approached the Appellant to procure his assistance in making drug buys. Further, Officer Schuck testified that before the Appellant was questioned, even though he was not under arrest, the officer read him his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Moreover, Officer Schuck stated that the Appellant not only waived his *Miranda* rights, but when specifically asked by the officer if he wanted to talk to them without an attorney, the Appellant indicated that he did. At the conclusion of the hearing, the trial court found that there was no violation of the Appel-

lant's Fifth Amendment right and that the Appellant had voluntarily given the statement to the police.

8. The Appellant was not arrested for the two counts of delivery of a controlled substance until June 12, 1991.

9. The Appellant also sought to introduce Mr. Rader's testimony regarding certain allegations made by Ms. Godbey against the Parkersburg Police Department. Specifically, Ms. Godbey alleged that the police have allowed her to engage in prostitution in exchange for sexual favors. The trial court found this evidence irrelevant and therefore inadmissible.

10. *See* 384 U.S. at 436, 86 S.Ct. at 1602.

that he had had sexual relations with Ms. Godbey. The Appellant acknowledged he had "always heard that [Ms. Godbey] wears a wire for the task force[,]" but that he did not participate in either of the January 1991 drug deals, which he indicated actually involved Mike West and Ms. Godbey. The Appellant testified that Ms. Godbey had given Mr. West the money during the January 8 and 11, 1991, drug transactions, but that the Appellant had failed to see what Mr. West delivered to Ms. Godbey, though he believed it to be marijuana. Further, during the second drug transaction, the Appellant stated that Mr. West was actually present in the cab and that the policemen surrounding the area had failed to see him. The Appellant acknowledged that Mr. West's voice appeared on only one of the tapes, but claimed that Mr. West had been silently gesturing to Ms. Godbey throughout the transaction.

Finally, the Appellant also sought to introduce in evidence a tape recorded interview between Appellant's counsel and Ms. Godbey, which occurred on March 18, 1992. In the interview, Ms. Godbey allegedly admitted that she had asked the Appellant ten or eleven times to buy marijuana from him only to be turned down, she had no knowledge that the Appellant was predisposed to commit the act of delivery of a controlled substance, and the Appellant received no remuneration during the alleged transaction. The State objected to the admission on this recorded interview. The trial court, after hearing arguments regarding the admission, ruled that the taped conversation was inadmissible hearsay.

In rebuttal during trial, the State offered the testimony of Officer Dougherty to refute the Appellant's claims regarding his statement given to police on June 4, 1991. Officer Dougherty testified that during the June 4th meeting with the police, the Appellant admitted selling drugs to Sharon Godbey and identified the motivating factor as money. Officer Dougherty testified that the Appellant did not relate to the officers Ms. Godbey's threat to tell the Appellant's wife he had sexual relations with Ms. Godbey. Additionally, the State offered a February 6, 1991, tape recorded conversation between the Appellant and Ms. Godbey, involving plans for a potential cocaine transaction.[11] The trial court conducted an in camera hearing, before concluding that the statement was admissible for the limited purpose of showing the Appellant's predisposition to engage in drug deals.[12] Further, the trial court instructed the jury that the tapes were admitted "not for the purpose that he [Appellant] did what he is charged with in this case, but only for the limited purpose of rebutting ... [Appellant's] claim that he would not have committed the acts except by way of entrapment...."

## II.

### TAPE RECORDINGS

First, we address whether the trial court improperly denied the Appellant's motion for a new trial. The Appellant contends that the Court erred in admitting the various tape-recorded conversations between the Appellant and Ms. Godbey, when Ms. Godbey failed to appear to testify. Five of the taped conversations concerned the two separate marijuana sales which occurred on January 8 and 11, 1991; two of the tapes concerned an attempted cocaine deal between the Appellant and Ms. Godbey which occurred on February 6, 1991, after the events leading to the Appellant's conviction. The Appellant argues that the admission of the tapes violated state law governing recorded communications, violated evidentiary rules prohibiting the admission of hearsay evidence and violated the Appellant's Sixth Amendment right to confront and cross-examine witnesses against him.

11. On February 6, 1991, Task Force agents recorded another conversation between the Appellant and Ms. Godbey which confirmed Ms. Godbey's representation to Task Force Agents that the Appellant had agreed to sell her cocaine. The cocaine deal was never accomplished.

12. The Appellant took the stand again in surrebuttal to explain the February 6, 1991, tape recorded conversation concerning the cocaine deal. The Appellant testified that the reason he engaged in this conversation with Ms. Godbey was because she was blackmailing him by threatening to tell his wife about their past sexual relations.

### A.

The Appellant asserts that the taped conversations concerning the marijuana transactions violated West Virginia Code §§ 62–1D–3 (1992) and 62–1D–6 (1992).[13] These statutory provisions hinge the admissibility of recorded conversations on the consent of one of the parties to the conversation. The Appellant contends that, absent Ms. Godbey's testimony, the State cannot prove Ms. Godbey's consent to the recording.

Neither West Virginia Code § 62–1D–3(c)(2) nor West Virginia Code § 62–1D–6 require that consent to record must be proven by the testimony of the consenting party. Further, this Court has never interpreted either of those provisions as imposing such a requirement. In fact, other courts have allowed consent to be shown through evidence other than the consenting individual's testimony, such as a policeman's testimony that an individual consented to the intercept. *State v. Welker*, 536 So.2d 1017 (Fla.1988); *see United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *United States v. Pierce*, 124 F.Supp. 264 (N.D.Ohio 1954), *aff'd*, 224 F.2d 281 (6th Cir.1955) (stating that Federal Communications Act does not forbid admission of police officers' testimony regarding telephone conversations between defendant and informant, to which officers had listened over extension telephone with informer's consent); *Wood v. Commonwealth*, 213 Va. 363, 192 S.E.2d 762 (1972) (stating that officer's testimony concerning telephone conversations between defendant and third person which officer overheard on extension line with third person's consent was admissible).

In *Welker*, the defendant was charged with trafficking cocaine after he sold thirty-five grams of cocaine to an undercover deputy sheriff. 536 So.2d at 1018. At trial, the defendant contended that he had been entrapped by a confidential informant, who had been aiding the sheriff's department in its investigation. The state introduced a tape recording of two telephone conversations between the confidential informant and the defendant. A deputy sheriff testified that the confidential informant had consented to the taping. The confidential informant did not testify. The defendant was convicted of possession, sale or delivery of cocaine with the intent to distribute and sentenced to four years imprisonment followed by two years probation. *Id.*

On appeal, the defendant argued that it was error to admit the tape recordings into evidence because the confidential informant never testified that he consented to the taping.[14] In rejecting this argument, the Supreme Court of Florida embraced the United States Supreme Court's decision in *White*, involving the admissibility of federal agents'

---

**13.** West Virginia Code § 62–1D–3(c)(2) provides:
 It is lawful under this article for a person to intercept a wire, oral or electronic communication where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception unless the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the constitution or laws of the United States or the constitution or laws of this state.
 West Virginia Code § 62–1D–6 provides:
 Evidence obtained, directly or indirectly, by the interception of any wire, oral or electronic communication shall be received in evidence only in grand jury proceedings and criminal proceedings in magistrate court and circuit court: Provided, That evidence obtained in violation of the provisions of this article shall not be admissible in any proceeding.

**14.** Before *Welker*, the Supreme Court of Florida had required that consent to the taping of a conversation be shown through the testimony of the consenting party. *See Tollett v. State*, 272 So.2d 490 (Fla.1973). The *Tollett* decision was based upon the Supreme Court of Florida's interpretation of the search and seizure provision of the Florida Constitution, which apparently was more stringent than the Fourth Amendment to the United States Constitution. *Welker*, 536 So.2d at 1019. Subsequently, in 1982, the search and seizure provision of the Florida Constitution was amended "to require it to be construed in conformity to the fourth amendment to the United States Constitution as interpreted by decisions of the Supreme Court of the United States." *Id.* Thus, according to the *Welker* court, if a United States Supreme Court decision would allow proof that an informant had consented to the taping of a conversation to come from evidence other than the consenting party's testimony, then the Supreme Court of Florida was bound to follow that decision. *Id.* (citing *Bernie v. State*, 524 So.2d 988 (Fla.1988). Therefore, the *Welker* court relied upon *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d

testimony about the contents of conversations between a defendant and a confidential informant overheard through an electronic eavesdropping device. 401 U.S. at 745, 91 S.Ct. at 1123. The Supreme Court in *White* held that the Fourth Amendment did not prohibit warrantless electronic surveillance, if it was done with the consent of one of the parties to the conversation. *Id.* at 748–54, 91 S.Ct. at 1124–27. Further, with regard to the informer disappearing before trial and not testifying during trial, the Supreme Court held that "[h]is unavailability at trial and proffering the testimony of other agents may raise evidentiary problems or pose issues of prosecutorial misconduct with respect to the informer's disappearance, but they do not appear critical to deciding whether prior events invaded the defendant's Fourth Amendment rights." *Id.* at 754, 91 S.Ct. at 1127. This holding in *White* was adopted by the Florida Supreme Court, as well as other federal courts. *See Welker*, 536 So.2d at 1019 (citing *United States v. Diaz*, 535 F.2d 130 (1st Cir.1976) (rejecting defendant's contention that prosecution failed to adequately establish informant's consent where informant failed to appear at trial); *United States v. James*, 495 F.2d 434 (5th Cir.), *cert. denied*, 419 U.S. 899, 95 S.Ct. 181, 42 L.Ed.2d 144 (1974) (finding that informant's consent to have conversations recorded was established by federal agent's testimony); *United States v. Bonanno*, 487 F.2d 654 (2d Cir. 1973) (holding that officer who was present when consent was obtained, but who was not officer who actually obtained consent to monitor and record telephone conversations, could testify that informant did consent because no rule requiring production of best witness)).

The Supreme Court of Florida ultimately ruled that "[p]roof of consent for purposes of electronic intercept shall be governed by traditional rules of evidence[,]" and that there was nothing in Florida's evidentiary rules

"pertaining to security of communications which suggests that the consent must be proven only by the testimony of the consenting party." *Welker*, 536 So.2d at 1020. This rule enunciated by the *Welker* court is also consistent with the analogous rule that a third-party's consent to a search need not be proven by the testimony of the consenting party. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Welker*, 536 So.2d at 1020.

In *Blackburn v. State*, 170 W.Va. 96, 290 S.E.2d 22 (1982), after a lengthy discussion of the United States Supreme Court decision in *White*, this Court "implicitly approved the plurality opinion in *White*," before holding that "[w]arrantless electronic recording of a defendant's conversation with the consent of a participant to the conversation who, unknown to the defendant, is acting in concert with the police does not violate the prohibition against unreasonable searches and seizures contained in article 3, section 6 of our state constitution." 170 W.Va. at 105, 290 S.E.2d at 32.

■ Accordingly, we hold that proof of consent for purposes of electronic intercept set forth in West Virginia Code §§ 62–1D–3 and 62–1D–6 need not be proven solely by the consenting individual's testimony, but can be proven through other evidence, such as the testimony of the person to whom consent was given, that the consenting individual actually consented to the electronic intercept.

In the present case, Officer Dougherty's testimony that Ms. Godbey consented to the intercept satisfied the statutory requirement of proving consent.[15] *See Welker*, 536 So.2d at 1017. Indeed, as the trial court noted during the suppression hearing, the officers' testimony concerning Ms. Godbey's acquiescence in the process of being equipped with a recording device clearly shows her consent to the process.[16]

---

453 (1971), which was the only such decision on point.

15. The police officers' testimony regarding Ms. Godbey's consent is not inadmissible hearsay. Rather it is admissible as original evidence or as a "verbal act." *Welker*, 536 So.2d at 1020; *see* Franklin D. Cleckley, Handbook on Evidence for West Virginia Lawyers § 46(B)(3), at 318–19 (1978).

16. On appeal, the parties have each submitted evidence not considered at trial either to support or to challenge Ms. Godbey's consent. The State appended handwritten statements signed by Ms. Godbey that indicate her voluntary cooperation in the investigation; the Appellant produced a signed affidavit wherein Ms. Godbey swears she was coerced into wearing a wire.

## B.

■ The Appellant also contends that admission of the taped conversations concerning the drug buys violated the evidentiary rules governing hearsay and Appellant's sixth amendment right to confront witnesses against him. As an initial matter, we note that Appellant's own recorded statements are clearly admissible under West Virginia Evidence Rule 801(d)(2)(A).[17] *See State v. Burd,* 187 W.Va. 415, 421, 419 S.E.2d 676, 682 (1991); Syl. Pt. 1, *State v. Maynard,* 183 W.Va. 1, 393 S.E.2d 221 (1990). Thus, the resolution of this issue centers upon whether Ms. Godbey's recorded statements were hearsay and therefore improperly admitted.

■ West Virginia Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.Va.R.Evid. 801(c). In syllabus point 1 of *Maynard,* we interpreted Rule 801(c) and held that

> [g]enerally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

183 W.Va. at 2, 393 S.E.2d at 222.

We again addressed whether out-of-court statements were inadmissible hearsay in *Burd,* where the state sought to introduce a co-conspirator's recorded statements against a defendant when the co-conspirator refused to testify at trial and the statements were not made in furtherance of the conspiracy. 187

W.Va. at 421, 419 S.E.2d at 682. We held that the statements were inadmissible as those of a co-conspirator; however, we concluded that the statements were not hearsay and therefore admissible, since they were not being introduced to prove the truth of the matter asserted, but were being admitted "solely to place the appellant's [defendant's] statements in context and make them comprehensible to the jury." *Id.* at 422, 419 S.E.2d at 683. Furthermore, the admission of the statements for that limited purpose did not implicate the defendant's sixth amendment right to confront witnesses because the statements were not being offered for the truth of the matter asserted or as substantive evidence of the crime. *Id.* (citing *United States v. Davis,* 890 F.2d 1373, 1380 (7th Cir.1989), *cert. denied,* 493 U.S. 1092, 110 S.Ct. 1165, 107 L.Ed.2d 1068 (1990) (citing *United States v. Gutierrez–Chavez,* 842 F.2d 77, 81 (5th Cir.1988); *United States v. Jordan,* 810 F.2d 262, 264 (D.C.Cir.), *cert. denied,* 481 U.S. 1032, 107 S.Ct. 1963, 95 L.Ed.2d 535 (1987); *United States v. Price,* 792 F.2d 994, 996–97 (11th Cir.1986); *United States v. Whitman,* 771 F.2d 1348, 1352 (9th Cir.1985))).

Accordingly, we conclude that Ms. Godbey's statements were not hearsay since the statements were not introduced for the truth of the matter asserted, but rather were offered solely to place the Appellant's statements in context and make them comprehensible to the jury. *See Burd,* 187 W.Va. at 422, 419 S.E.2d at 683. Thus, the trial court did not err in admitting said statements in evidence at trial.

■ Even if we had concluded that Ms. Godbey's taped statements concerning the marijuana deal were hearsay, those statements were still admissible under West Virginia Rule of Evidence 804(b)(5).[18]

---

**17.** Rule 801(d)(2)(A) provides, in pertinent part, that "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... his own statement, in either his individual or a representative capacity."

**18.** Rule 804(b)(5) provides, in pertinent part:

(b) Hearsay Exceptions.—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(5) Other Exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts;

'The language of Rule 804(b)(5) of the West Virginia Rules of Evidence and its counterpart in Rule 803(24) requires that five general factors must be met in order for hearsay evidence to be admissible under the rules. First and most important is the trustworthiness of the statement, which must be equivalent to the trustworthiness underlying the specific exceptions to the hearsay rule. Second, the statement must be offered to prove a material fact. Third, the statement must be shown to be more probative on the issue for which it is offered than any other evidence the proponent can reasonably procure. Fourth, the statement must comport with the general purpose of the rules of evidence and the interest of justice. Fifth, adequate notice of the statement must be afforded the other party to provide that party a fair opportunity to meet the evidence.' Syl. pt. 5, *State v. Smith*, [178] W.Va. [104], 358 S.E.2d 188 (1987).

Syl. Pt. 1, *State v. Bailey*, 179 W.Va. 1, 365 S.E.2d 46 (1987).

■ Additionally, in syllabus point 2 of *State v. James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843 (1990), we held that "[t]he two central requirements for admission of extrajudicial testimony under the Confrontation Clause contained in the Sixth Amendment to the United States Constitution are: (1) demonstrating the unavailability of the witness to testify; and (2) proving the reliability of the witness's out-of-court statement." A witness is unavailable if the witness "is absent from the hearing and the proponent of his statement has been unable to procure his attendance ... by process or other reasonable means." W.Va.R.Evid. 804(a)(5). "In order to satisfy its burden of showing that the witness is unavailable, the State must prove that it has made a good-faith effort to obtain the witness's attendance at trial. This showing necessarily requires substantial diligence." Syl. Pt. 3, *James Edward S.*, 184 W.Va. at 410, 400 S.E.2d at 845; *see* Syl. Pt.

2, *State v. Phillips*, 187 W.Va. 205, 417 S.E.2d 124 (1992).

■ Further,

[u]nder the requirements of the Confrontation Clause contained in the Sixth Amendment to the United States Constitution, evidence offered under the residual hearsay exceptions contained in Rule 803(24) and Rule 804(b)(5) of the West Virginia Rules of Evidence is presumptively unreliable because it does not fall within any firmly rooted hearsay exception, and, therefore, such evidence is not admissible. If, however, the State can make a specific showing of particularized guarantees of trustworthiness, the statements may be admissible. In this regard, corroborating evidence may not be considered, and it must be found that the declarant's truthfulness is so clear that cross-examination would be of marginal utility.

Syl. Pt. 6, *James Edward S.*, 184 W.Va. at 410, 400 S.E.2d at 845.

■ In this case, the State subpoenaed Ms. Godbey to testify at trial. While she appeared on the first day of trial, she was not called to testify. For the remainder of the trial, Ms. Godbey ignored the subpoena and failed to appear. Upon her failure to appear, the State ordered several policemen to locate her, but the police were unsuccessful. The State then asked the trial court to issue a capias ordering her arrest for failure to appear under the State's subpoenas. Notwithstanding these efforts, the State could not procure Ms. Godbey's attendance at trial. Under these circumstances, we conclude the State demonstrated Ms. Godbey's unavailability as contemplated by Rule 804(a)(5).

Additionally, the trial court in its discretion found that the testimony of Task Force Officers Dougherty, Schuck and Deem supplied sufficient guarantees of trustworthiness as to the taped conversations. Each officer testified that he witnessed the transactions which

and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently

in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it his intention to offer the statement and the particulars of it, including the name and address of the declarant.

were the subject of the conversations and Officer Dougherty testified that he heard the conversations as they occurred. Furthermore, Officer Dougherty identified the voices on the tape as belonging to Ms. Godbey and the Appellant, and confirmed that the tapes accurately recorded the entirety of what was said during the drug deals.

Consequently, the State demonstrated not only Ms. Godbey's unavailability to testify at trial, but the State also demonstrated particular guarantees of trustworthiness with regard to Ms. Godbey's taped statements. Thus, the trial court properly admitted the taped statements under Rule 804(b)(5), and there was no violation of the Appellant's Sixth Amendment right to confront his accuser in allowing the taped statements in evidence.[19]

## C.

 Next, the Appellant contends the trial court erred in refusing to admit in evidence a tape recorded interview between Ms. Godbey and the Appellant's lawyer, offered by the Appellant to support his entrapment defense and to demonstrate that someone other than the Appellant committed the crimes. During the interview, Ms. Godbey purportedly admitted that she had asked the Appellant ten or eleven times to buy marijuana from him only to be turned down, she had no knowledge that the Appellant was predisposed to commit the act of delivery of a controlled substance, and the Appellant received no remuneration during the alleged transaction. The Appellant contends these tapes were no more hearsay than the taped conversations about the drug deal. The State argues that the taped interview was inadmissible hearsay.

We find the Appellant's argument unpersuasive. First, the Appellant was offering the taped interview to prove the truth of the matter asserted, so under West Virginia Rule of Evidence 801(c), those statements were hearsay. The only exception to hearsay under the rules of evidence which may have permitted admission of the statements is West Virginia Rule of Evidence 804(b)(5), which is the residual hearsay exception. *See supra* note 18. While it is clear that the Appellant met the requirement of unavailability of the witness to testify, the Appellant still failed to meet the burden of proving that the statements had a "particularized guarantees of trustworthiness." *See* Syl. Pt. 6, *James Edward S.*, 184 W.Va. at 410, 400 S.E.2d at 845. The untrustworthiness of the statements was established by the fact that the only persons able to testify about the interview were Ms. Godbey and the Appellant's counsel. Ms. Godbey, however, was unavailable and the Appellant's lawyer was ethically prohibited from testifying about a contested issue in a trial in which he serves as an advocate. *See* W.Va.R.Prof.Conduct 3.7. Further, while the Appellant asserts in his brief that his witness preacipes included Ms. Godbey, these documents were not included in the record submitted before this Court. Moreover, the Appellant did not actually serve Ms. Godbey with a subpoena, which should have been done since, based on the contents of the tapes, Ms. Godbey could have testified as a defense witness.[20] Absent a guaranty of trustworthiness, the Appellant's taped interview contained pure hearsay, not within any recognized exception and lacked proper evidentiary foundation. *See State v. Garrett*, 182 W.Va. 166, 176–77, 386 S.E.2d 823, 833–34 (1989). Accordingly, we conclude that the Appellant's taped interview

**19.** The Appellant also contends that he failed to receive adequate notice of the statement pursuant to Rule 804(b)(5) which requires the proponent to make the contents of the statement, including the declarant's name and address, available to the opposing party before trial with sufficient time to allow the opposing party an opportunity to meet the evidence. W.Va.R.Evid. 804(b)(5). However, the State revealed the contents of the tape recordings to the Appellant seven months before trial, on February 10, 1992. Moreover, Ms. Godbey's name and address is apparent on the State's witness list. The only

thing the Appellant was not notified of was Ms. Godbey's unavailability to testify at trial, and this neither is a specific requirement of the rule, nor is it something that the State could have provided since the State was just as surprised as the Appellant when Ms. Godbey failed to appear.

**20.** Had Ms. Godbey actually testified at trial, then the Appellant could have introduced the tape for impeachment purposes, if her testimony had been inconsistent.

of Ms. Godbey was properly excluded by the trial court.

### D.

■ Finally, the Appellant alleges the trial court erred in admitting evidence of the February 6, 1991, telephone conversation between the Appellant and Ms. Godbey concerning an attempted cocaine transaction. The Appellant contends the admission of this tape recording violated West Virginia Rules of Evidence Rule 404(b)[21] and 403.[22] In contrast, the State argues that the tape was introduced only to refute the Appellant's entrapment defense by showing the Appellant's predisposition to commit drug deals. Further, upon admission, the trial court charged the jury that the tapes were admitted "only for the limited purpose of rebutting . . . [Appellant's] claim that he would not have committed the acts except by way of entrapment. . . ."

West Virginia Rule of Evidence 404(b) prohibits evidence of other bad acts offered to prove the bad character of an accused and to show that the accused acted in conformity with his bad character; however, the rule allows the admission of such evidence for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." W.Va.R.Evid. 404(b). This list of "other purposes" is illustrative only, and the exceptions to the admission of collateral crimes listed in the rule are not exhaustive. *State v. Edward Charles L.*, 183 W.Va. 641, 647, 398 S.E.2d 123, 129 (1990); *State v. Hanna*, 180 W.Va. 598, 607, 378 S.E.2d 640, 649 (1989).

**21.** Rule 404(b) provides:

(b) *Other Crimes, Wrongs, or Acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**22.** Rule 403 provides, in pertinent part:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

Since the record indicates that the State offered the tape to prove something other than the Appellant's bad character and gave a limiting instruction, we find that the tape was properly admitted under Rule 404(b). We must now consider whether probative value of the tape outweighed its prejudicial effect.

West Virginia Rule of Evidence 403 prohibits the admission of evidence the probative value of which is out weighed by its potential prejudice. This rule, as well as West Virginia Rule of Evidence 402,[23] direct the trial court to admit relevant evidence, but to exclude any evidence the probative value of which is substantially outweighed by the danger of unfair prejudice to an accused. Syl. Pt. 4, *Gable v. Kroger Co.*, 186 W.Va. 62, 410 S.E.2d 701 (1991). These decisions are left to the sound discretion of the trial judge. *Id.* at 66, 410 S.E.2d at 705. After reviewing the record in this case, we find that the trial court did not abuse its discretion in admitting the February 6th telephone conversation.

### III.

■ The Appellant contends that the trial court erred in admitting in evidence the two bags of marijuana he allegedly delivered to Ms. Godbey due to an insufficient chain of custody. Specifically, he asserts that the State, without Ms. Godbey's testimony, failed to demonstrate that the bags of marijuana that Ms. Godbey gave to Task Force agents were the same bags of marijuana given to Ms. Godbey by the Appellant. At trial, the Appellant objected to the introduction of this evidence.

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**23.** West Virginia Rule of Evidence 402 provides, in pertinent part:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of West Virginia, these rules, or other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible.

**662**

■ The rules governing chain of custody are designed to ensure that evidence introduced at trial is substantially similar in condition to the same evidence as discovered during the pretrial investigation. *See* Syl. Pt. 1, *State v. Davis,* 164 W.Va. 783, 266 S.E.2d 909 (1980). Whether a sufficient chain of custody has been shown to permit the admission of physical evidence is an issue for the trial court to resolve. *Id.* at 783–84, 266 S.E.2d at 910, Syl. Pt. 2. In *Davis,* we recognized that to allow the admission of physical evidence into a criminal trial, "it is only necessary that the trial judge, in his discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with." *Id.* at 786–87, 266 S.E.2d at 912. A trial court's decision on chain of custody will not be disturbed on appeal absent an abuse of discretion. *Id.* at 783, 266 S.E.2d at 909, Syl. Pt. 2; *see* Syl. Pt. 8, *State v. Young,* 173 W.Va. 1, 311 S.E.2d 118 (1983).

In the present case, Officer Dougherty testified that, on January 9, 1991, he saw the Appellant hand Ms. Godbey a package out of the window of the Appellant's cab. Officer Dougherty then immediately met with Ms. Godbey and received a package of marijuana from her. Officer Deem testified that on January 11, 1991, he saw Ms. Godbey leave the Appellant's cab and enter a rest room in Subway restaurant. Immediately after Ms. Godbey exited the Subway, Officer Deem picked her up and received a bag of marijuana from her. During the drug transactions, the conversations between the Appellant and Ms. Godbey were being recorded by the Task Force. These recordings also imply that Appellant gave Ms. Godbey marijuana.[24] Further, the defenses advanced by the Appellant necessarily admit that Ms. Godbey received

marijuana in his cab. In fact, the Appellant testified that Ms. Godbey received marijuana in his cab on two separate occasions. Based on a review of the officers' testimony, we find that the trial court did not abuse its discretion in admitting the two bags of marijuana in evidence.

## IV.

## REMAINING ASSIGNMENTS OF ERROR

■ The Appellant asserts the trial court erred in granting the State's motion in limine excluding evidence of Ms. Godbey's charges of sexual exploitation and abuse at the hands of the Parkersburg Police Department.[25] The trial judge, after conducting a hearing on the State's motion, opined that Ms. Godbey's allegations were irrelevant to this case, as they failed to implicate any of the Task Force officers[26] who had conducted the investigation against the Appellant, but reserved ruling on the State's motion to see whether the allegations became relevant during the course of the trial. *See* W.Va.R.Evid. 401 and 402. Rulings on motions in limine lie within the trial court's discretion. These rulings rarely constitute reversible error. Franklin D. Cleckley, *supra,* § 18(B)(9), at 105–06 (citing *First Nat'l Bank of Ronceverte v. Bell,* 158 W.Va. 827, 215 S.E.2d 642 (1975); *Chapman v. Kane Transfer Co., Inc.,* 160 W.Va. 530, 236 S.E.2d 207 (1977)). In that regard, the trial court did not rule on the State's motion in limine. Rather, the trial court allowed the Appellant an opportunity to see whether Ms. Godbey's allegations against the police became relevant during trial. Since the Appellant never attempted to introduce Ms. Godbey's allegations of sexual exploitation during trial, the trial court never

24. For example, in the recording of the January 11, 1991, phone call from Ms. Godbey to the Appellant, the Appellant states "I'll need the money up front like usual." Later, after they meet, Ms. Godbey gives the Appellant the money and he tells her to "[h]old her down," apparently asking her to keep the money out of sight. Finally, when the Appellant delivers the marijuana, Ms. Godbey states "[l]et me have it I got to go, ..." to which the Appellant replies "[t]hree quarter of...."

25. On May 26, 1992, Ms. Godbey publicly accused members of the Parkersburg Police Department of allowing her to prostitute herself in exchange for sexual favors. While Ms. Godbey did go to the newspapers with her allegations, she never filed any formal charges against any officer, nor any written affidavit or other statement.

26. The State represented to the court that the implications were not against any of the Task Force officers.

explicitly ruled on the relevancy issue. Accordingly, we find the trial court's ruling on the State's motion in limine to be correct.

■ The Appellant next contends the trial court erred by excluding certain testimony of defense witness John Rader. The Appellant sought to introduce Mr. Rader's testimony regarding a conversation he had with deceased defense witness, Mike West,[27] and Mr. Rader's testimony about Ms. Godbey's allegations against the police.[28] The trial court refused to allow this testimony, calling it "pure hearsay." As the testimony was an out of court statement, offered to prove the truth of the matter asserted, it was clearly hearsay, for which there was no recognized hearsay exception. *See* W.Va.R.Evid. 801(c). Thus, the trial court properly excluded this evidence.

■ Further, the Appellant asserts the trial court erred in failing to give the Appellant's jury instruction no. 5 which provides:

The court instructs the jury that if, after considering all the evidence introduced in this case, they entertain any reasonable doubt as to whether the Defendant has been identified as the person who committed the offense charged in the indictment, then the jury are [sic] instructed that they should find the Defendant not guilty.

The Appellant contends that this instruction supported his assertion that Mike West was the party who had actually delivered marijuana to Ms. Godbey. There was no evidence at trial that Mr. West was present in the cab when the marijuana was delivered on January 9, 1991. Furthermore, Task Force officers testified that the Appellant and Ms. Godbey were the only occupants of the cab when the marijuana was delivered on January 11, 1991. Accordingly, the evidence admitted at trial did not warrant the instruction. Nonetheless, the substance of the instruction was covered in the charge given by the trial court. As cumulative jury instructions are properly refused, Syl. Pt. 9, *State v. Reedy*, 177 W.Va. 406, 352 S.E.2d 158 (1986), we find no error in the trial court's refusal to give the Appellant's instruction on identity.

■ Finally, the Appellant argues that the trial court erred in denying the Appellant's motion to dismiss based on a violation of his right to a speedy trial. A criminal defendant is normally entitled to be tried within three terms of court from the date of his indictment. W.Va.Code § 62–3–21 (1992). When calculating the three terms, the term of indictment is not counted as one of those terms. *See* Syl. Pt. 1, *State ex rel. Smith v. DeBerry*, 146 W.Va. 534, 120 S.E.2d 504 (1961), *overruled on other grounds, State ex rel. Sutton v. Keadle*, 176 W.Va. 138, 342 S.E.2d 103 (1985); Syl. Pt. 1, *State v. Crawford*, 83 W.Va. 556, 98 S.E. 615 (1919). The Appellant was indicted in the January 1992 term of court. At that time there were four regular terms of court in Wood County: January, April, July and October. Even though the Appellant's trial was continued from the April term of court to the July term of court, he was tried on September 28, 1992, which was during the July term of court, and which was the second term of court after his indictment. Accordingly, we see no denial of the Appellant's speedy trial rights.[29]

Based on the foregoing, the decision of the Circuit Court of Wood County is hereby affirmed.

Affirmed.

---

27. The Appellant states that Mr. Rader would have testified that Mr. West told him that Mr. West had delivered the drugs to Ms. Godbey.

28. The Appellant also sought to introduce Mr. Rader's testimony about Ms. Godbey's alleged contacts with the Parkersburg Police Department. The trial court excluded this testimony only after giving Appellant an opportunity to demonstrate the relevance of the testimony. Since Appellant was unable to do so, the trial court was certainly within the limits of its discretion in excluding the evidence.

29. The Appellant has also raised the following assignments of error: the conviction was contrary to the evidence; the Appellant was denied an opportunity to call witnesses; the investigation which led to the Appellant's arrest was so outrageous that the indictment should be dismissed on due process grounds; and, the Appellant was denied a trial by a fair and impartial tribunal. After a careful review of the record in this case, we find these assignments to be without merit.